# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————

## E.DIGITAL CORPORATION
*Plaintiff-Appellant,*

v.

## ZTE CORPORATION, ZTE (USA) INC., PANTECH WIRELESS, INC., PANTECH CO. LTD., AND WOODMAN LABS INC.,
*Defendants-Appellees.*

———————————

## 2014 -1239, -1242, -1243

———————————

Appeals from the United States District Court for the Southern District of California in No. 3:13-cv-00781-DMS-WVG, Judge Dana M. Sabraw.

———————————

## DEFENDANT-APPELLEE WOODMAN LABS INC.'S PRINCIPAL BRIEF

———————————

Hector J. Ribera
Michael J. Sacksteder
Carolyn Chang
Bryan A. Kohm
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041

(650) 988-8500
(650) 938-5200 (fax)
hribera@fenwick.com
msacksteder@fenwick.com
cchang@fenwick.com
bkohm@fenwick.com

*Attorneys for Defendant-Appellee Woodman Labs, Inc.*

# CERTIFICATE OF INTEREST

Counsel for the Defendant-Appellee Woodman Labs, Inc., now GoPro, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

       Woodman Labs, Inc. (recently renamed GoPro, Inc.)

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

       As indicated in item 1

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

       None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: Hector J. Ribera, Michael J. Sacksteder, Carolyn Chang and Bryan A. Kohm of Fenwick & West; former Fenwick & West attorney, Erin Simon.


Dated: June 5, 2014         By: */s/ Hector J. Ribera*
                         Hector J. Ribera

                         *Attorneys for Defendant-Appellee*
                         *Woodman Labs, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .......................................................................... i

TABLE OF ABBREVIATIONS ...................................................................... vii

STATEMENT OF RELATED CASES ............................................................ viii

STATEMENT OF THE ISSUES ...................................................................... vi

STATEMENT OF THE CASE ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

I. THE '774 PATENT ................................................................................ 3

II. PRIOR LITIGATION INVOLVING THE '774 PATENT ...................... 6

III. THE DISTRICT COURT GRANTS THE MOTION TO APPLY
COLLATERAL ESTOPPEL ................................................................... 8

IV. THE DISTRICT COURT ENTERS JUDGMENT PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 54(b) ........................... 9

ARGUMENT .................................................................................................... 12

I. THE DISTRICT COURT PROPERLY HELD THAT
COLLATERAL ESTOPPEL PRECLUDED E.DIGITAL FROM
RELITIGATING CLAIM CONSTRUCTIONS DETERMINED
BY THE COLORADO COURT ............................................................. 12

    A. Legal Standard ............................................................................ 12

    B. The District Court Properly Applied Collateral Estoppel to
the Construction of the Sole Memory Limitation .......................... 13

    C. The Reexamination of the '774 Patent Cannot Impact the
Identity of the Issues ................................................................... 17

    D. Consideration of the Reexamination of the '774 Patent Was
Proper and Necessary to Determine Whether the Claim
Construction Issues Remained the Same ...................................... 24

# TABLE OF CONTENTS
## (Continued)

**Page**

II.   BASIC CIVIL PROCEDURE LAW MAKES CLEAR THAT THE
      APPEALED JUDGMENT AS TO GOPRO IS FINAL ............................. 27

III.  CONCLUSION ........................................................................... 31

PROOF OF SERVICE .......................................................................... 32

CERTIFICATE OF COMPLIANCE ...................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
   350 F.3d 1365 (Fed. Cir. 2003) ...................................................26, 27

*Air Turbine Technology, Inc. v. Atlas Copco AB*,
   410 F. 3d 701 (Fed. Cir. 2005) ........................................................28

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012) ("*Aspex Eyewear I*") ...................9, 26

*Aspex Eyewear, Inc. v. Zenni Optical LLC*,
   713 F.3d 1377 (Fed. Cir. 2013) ...............................................*passim*

*Bloom Eng'g v. N. Am. Mfg. Co.*,
   129 F.3d 1247 (Fed. Cir. 1997) ..........................................18, 19, 20

*Creo Prods., Inc. v. Presstek, Inc.*,
   305 F.3d 1337 (Fed. Cir. 2002) ........................................................20

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
   836 F.2d 1320 (Fed. Cir. 1987) .................................................12, 13

e.*Digital Corp. v. Casio America, Inc., et al.*,
   Civil Action No. 08-cv-00093 (E.D. Tex.) ..........................................6

e.*Digital Corp. v. Pentax of America, Inc.*,
   Civil Action No. 09-cv-2578 (D. Col.) ......................................*passim*

*Gillette Co. v. S. C. Johnson & Son Inc.*,
   12 U.S.P.Q.2d 1929 (D. Mass. 1989), *aff'd*, 919 F.2d 720,
   16 U.S.P.Q.2d 1923 (Fed. Cir. 1990) ...............................................18

*Golden Bridge Technology, Inc. v. Apple Inc.*,
   937 F. Supp. 2d 490 (D. Del. 2013) ..................................................26

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
   183 F.3d 1369, 51 U.S.P.Q.2d 1518 (Fed. Cir.1999) ........................20

# TABLE OF AUTHORITIES
## (Continued)

<u>Page(s)</u>

*Hydranautics v. FilmTec Corp.*,
   204 F.3d 880 (9th Cir. 2000) ............................................................. 13

*Illumina, Inc. v. Complete Genomics, Inc.*,
   2012 U.S. Dist. LEXIS 15268 (N.D. Cal. Feb. 8, 2012) .................................. 25

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994) ..................................................... *passim*

*Int'l Gamco, Inc. v. Multimedia Games Inc.*,
   732 F. Supp. 2d 1082 (S.D. Cal. 2010) ............................................... 16

*Liquid Dynamics Corp. v. Vaughan Co.*,
   355 F.3d 1361 (Fed. Cir. 2004) ................................................... 29, 30

*Medtronic, Inc. v. Guidant Corp.*,
   465 F.3d 1360 (Fed. Cir. 2006) ...................................................... 19

*Monsanto Co. v. Scruggs*,
   459 F.3d 1328 (Fed. Cir. 2006), *cert. denied*,
   127 S. Ct. 2062 (2007) .............................................................. 14

*Nystrom v. TREX Co.*,
   339 F.3d 1347 (Fed. Cir. 2003) ...................................................... 30

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979) ................................................................. 12

*Paulo v. Holder*,
   669 F.3d 911 (9th Cir. 2011) ........................................................ 13

*Predicate Logic, Inc. v. Distributive Software, Inc.*,
   544 F.3d 1298 (Fed. Cir. 2008) ...................................................... 19

*Senju Pharm. Co. v. Apotex Inc.*,
   No. 2013-1027 (Fed. Cir. Mar. 31, 2014) ......................................... 19, 20

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Shell Petroleum, Inc. v. United States*,
   319 F.3d 1334 (Fed. Cir. 2003) ........................................12

*Spraytex, Inc. v. DJS&T*,
   96 F.3d 1377 (Fed. Cir. 1996) ..........................................27

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).......................................................12

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ....................................26, 27

*Westwood Chem., Inc. v. United States*,
   525 F.2d 1367 (Ct. Cl. 1975)...........................................16

**STATUTES**

35 U.S.C. § 305 ...............................................................18

**RULES**

Fed. R. Civ. P. 54(b) ...............................................*passim*

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| A_____ | Cited page(s) of the Joint Appendix |
| '774 patent | U.S. Patent No. 5,491,774 |
| Br. at __ | Cited page(s) of the Corrected Principal Brief for Plaintiff-Appellant e.Digital Corporation |
| e.Digital | Plaintiff-Appellant e.Digital Corporation |
| GoPro | Defendant-Appellee Woodman Labs, Inc., which was renamed GoPro, Inc. |
| Court | United States Court of Appeals for the Federal Circuit |

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. Rule 47.5, Defendant-Appellee Woodman Labs, Inc., now GoPro, Inc. states that no other appeal in or from the same civil action in the lower court was previously before this or any other appellate court and that the following cases pending in front of this Court are companion and consolidated with this case:

- *e.Digital Corporation v. Futurewei Technologies, Inc.*, Case No. 14-1019

- *e.Digital Corporation v. Pantech Wireless, Inc.*, Case No. 14-1242

## STATEMENT OF THE ISSUES

(1)     Whether the Court should affirm the district court's grant of the motion to apply collateral estoppel as it relates to United States Patent No. 5,491,774, and thus affirm the judgment of non-infringement of the '774 patent entered in favor of GoPro.

(2)     Whether the district court's certified judgment of non-infringement of the '774 patent under Federal Rule of Civil Procedure 54(b) and dismissal of GoPro's related counterclaims without prejudice is sufficiently final for purposes of this appeal.

## STATEMENT OF THE CASE

Woodman Labs, Inc., now named GoPro, Inc. ("GoPro") respectfully submits that the Court should affirm the district court's Collateral Estoppel Order and associated judgment of non-infringement of U.S. Patent No. 5,491,774 in favor of GoPro.[1]

The *Pentax* court construed the limitation in all the independent claims of the '774 patent at issue in this action—"a flash memory module which operates as sole memory of the received processed sound electrical signals" (the "sole memory limitation")—and that action, having been dismissed with prejudice pursuant to the parties' stipulation, resulted in sufficient finality for the application of collateral estoppel. e.Digital does not dispute that. Nor does e.Digital contest that it was a party to the *Pentax* action. e.Digital's only challenge to the collateral estoppel determination is that the issues presented in the earlier *Pentax* litigation are not identical to those before the district court in this action. Specifically, e.Digital points to the reexamination of the '774 patent that took place after the *Pentax* litigation to argue that the reexamination makes the issues different. But the same claim terms were at issue in both litigations. Although e.Digital amended an unrelated claim limitation, it made no modifications to the "sole memory limitation" at issue here. Indeed, nothing occurred during the reexamination

---

[1] U.S. Patent No. 5,839,108 was not asserted against GoPro, and therefore GoPro does not address any arguments raised by e.Digital with respect to that patent.

relevant to the construction of the "sole memory" limitation and therefore the central legal issue subject to collateral estoppel, its construction, is identical in the *Pentax* and this litigation.

e.Digital also raises a side argument that the final judgment of non-infringement on the '774 patent as to GoPro lacks sufficient finality pursuant to Federal Rule of Civil Procedure 54(b) because GoPro's counterclaims relating to the '774 patent were dismissed without prejudice. This argument similarly lacks merit. District courts routinely dismiss a defendant's counterclaims, even over objection, after a finding of non-infringement has been entered. Here, in light of the stipulated judgment of non-infringement, GoPro and e.Digital stipulated to the dismissal of GoPro's counterclaims without prejudice so as to preserve the parties' and judicial resources. This Court regularly endorses such an approach and e.Digital fails to cite a single authority suggesting the practice is legally improper.

For the reasons stated below, GoPro respectfully requests that the Court affirm the lower court's judgment of non-infringement of the '774 patent.

## STATEMENT OF FACTS

## I. THE '774 PATENT

The '774 patent relates to a "record/playback device for use with a removable, interchangeable, flash memory recording medium which enables extended recording comparable with tape cassette dictating equipment." A246 ('774 patent), Abstract. According to the specification, prior art record/playback devices employing cassette tapes were well known. A254 at 1:18-25. It also was "well known to store virtually all forms of data in either digital or analog format within a computer [even including] voice information." *Id*. at 2:4-6.

During prosecution of the application which led to the issuance of the '774 patent, the applicants narrowed their claims in response to the examiner's rejection in view of the prior art. As a result of the narrowing amendment, all of the '774 patent claims require that the claimed device have "a *flash memory* module which operates as *sole memory* of the received processed sound electrical signals" (the "sole memory limitation").[2] A537, A540. The applicants argued that, as amended, the claims were patentable because "[a]s was noted in the Examiner conference, Applicant is unaware of any prior art teaching which uses flash memory *without another memory system such as RAM*." A545. The '774 patent then issued.

In 2010, a third party petitioned for *ex parte* reexamination of claims 1-15, 18, and 19 of the '774 patent, and the U.S. Patent and Trademark Office ("PTO")

---

[2] All emphasis is added unless otherwise noted.

granted the petition.  A263.  The PTO ordered reexamination of claims 1-5, 18,

and 19 on January 11, 2011.  A264.  During the reexamination, e.Digital presented

various arguments related to the "control logic circuitry" and "power source"

recited in original independent claims 1 and 19.  Ultimately, e.Digital amended the

independent claims to add limitations to the "control logic circuitry" claim

element, which are shown below in the amended original claim 1 (underlined

language added by e.Digital; emphasis added in bold italics to highlight the claim

language not amended and subject to this appeal):

> A record/playback device for use with a removable,
> interchangeable, flash memory recording medium which
> enables extended recording comparable with tape cassette
> dictating equipment, said device comprising:
>
> a housing;
>
> a microphone element coupled to the housing and
> configured to receive and process sound into electrical
> signals;
>
> control circuitry coupled to the microphone element
> and including signal input circuitry, amplification
> circuitry, analog-to-digital conversion circuitry, memory
> control circuitry, signal output circuitry and control logic
> circuitry, which includes a microprocessor coupled to
> switch circuitry, for performing record and playback
> functional operations with respect to the electrical signals
> and other regulated components of the record/playback
> device;
>
> switch means coupled to the control circuitry for
> selecting the desired functional operations to be
> performed;
>
> a receiving socket electrically coupled to the memory
> control circuitry and configured for electrical coupling

with ***a flash memory module which operates as sole memory of the received processed sound electrical signals*** and is capable of retaining recorded digital information for storage in nonvolatile form;

a speaker coupled to the control circuitry for playback of recorded digital information; and

a power source coupled to the control circuitry for supplying electrical power to the device;

wherein the power source is coupled to the switch circuitry; and

wherein the switch circuitry includes multiple transistors configured, to enable supply of electrical power to the receiving socket and to enable at least one of the microphone element and the speaker during record and playback functional operations and in response to cont[r]ol signals provided by the microprocessor, and to optionally disable supply of electrical power to the receiving socket and to optionally enable supply of electrical power to at least one of the microphone element and the speaker between occurrences of record and playback functional operations and in response to control signals provided by the microprocessor.

A264-A265.

e.Digital made similar amendments to original independent claim 19. The two amended independent claims issued as new independent claims 33 and 34, respectively, on August 14, 2012, and claims 1 and 19 were canceled. During the reexamination, e.Digital did not amend or make arguments involving the "sole memory" limitation.

## II.     PRIOR LITIGATION INVOLVING THE '774 PATENT

e.Digital previously asserted the '774 patent, along with others, in two cases. The first, captioned e.*Digital Corp. v. Casio America, Inc.*, *et al.*, was filed in the United States District Court for the Eastern District of Texas, Civil Action No. 08-cv-00093 (E.D. Tex.).  The Court dismissed the action pursuant to a joint request before the issuance of any substantive orders on the merits.

The second case, *e.Digital Corp. v. Pentax of America, Inc.*, Civil Action No. 09-cv-2578 (D. Col.), was filed in the United States District Court for the District of Colorado on November 2, 2009.  A49.  e.Digital once again asserted, *inter alia*, the '774 patent against 28 defendants, all of whom make and/or sell digital cameras, cellular phones and/or smart phones.  *Id*.  Unlike the *Casio* case, the *Pentax* case proceeded through a first phase of discovery, including expert discovery, in which the parties focused on claim construction issues.  A54.  After completing claim construction discovery, e.Digital and the defendants briefed the claim construction issues.  A584.  About two weeks after the PTO granted the ex parte request for reexamination of the '774 patent, the *Pentax* court conducted a one-day *Markman* hearing on January 28, 2011, which included live testimony from the lead inventor, expert testimony, and attorney argument.  *See* A584-A585. The *Pentax* court issued its claim construction ruling on June 28, 2011.  A583.

In its claim construction ruling, the *Pentax* court discussed the technology disclosed in the '774 patent, relying on the testimony of the lead inventor elicited by e.Digital during his testimony at the *Markman* hearing, and summarized the salient facts from the '774 patent's file history, including that e.Digital had added the "sole memory" limitation during prosecution to overcome prior art-based rejections.  A584-A588.  The court noted in its claim construction ruling that "the Defendants stated, without objection from the Plaintiff, that there would be no need to construe [any] terms [other than the 'sole memory' term] if the Court were to construe the 'sole memory' term in favor of the Defendants.  Accordingly, as the ensuing discussion makes clear, the Court need only construe the 'sole memory' claim [term]."  A585.

Based on the intrinsic and extrinsic evidence submitted by the parties, including the live testimony provided at the *Markman* hearing, the *Pentax* court construed the phrase "flash memory module which operates as sole memory" to require that "the device use only flash memory, not RAM or any other memory system, while engaging the CODEC, DSP (as applicable), and memory control functions, as well as storing the fully-manipulated data."  A597-A598.  The *Pentax* court also construed the remainder of this claim limitation—"received processed sound electrical signals"—to mean "the electrical signals that have been generated by the microphone and passed through the amplifier and gain control circuits, but

have yet to be converted by the CODEC." *Id*.  e.Digital settled with the remaining

*Pentax* defendants soon thereafter, and upon joint motion by the remaining parties,

the case was dismissed with prejudice on October 26, 2011.  A55.  Neither

e.Digital nor any of the *Pentax* defendants requested that the claim construction

ruling be vacated nor was there an appeal ever filed.  *Id*.

## III.   THE DISTRICT COURT GRANTS THE MOTION TO APPLY COLLATERAL ESTOPPEL

Given the *Markman* opinion in the *Pentax* litigation and e.Digital's assertion

of claims in this litigation containing the "sole memory" limitation, the defendants

(including GoPro) filed a motion asking the district court to apply collateral

estoppel to the construction of the "sole memory" limitation.  A480-A482.

e.Digital opposed, and the matter was heard on July 26, 2013.  The district court

entered an order granting defendants' motion on August 21, 2013, finding that the

doctrine of collateral estoppel barred e.Digital from relitigating the construction of

the "sole memory" limitation (the "Collateral Estoppel Order").  A48-A58.

In reaching its conclusion, the district court first addressed e.Digital's

contention that the issues were not identical in the two cases.  A50.  The court

considered e.Digital's position that the reexamination of the '774 patent, which led

to the issuance of new claims, necessarily barred the application of collateral

estoppel, as well as its argument that the reexamination history substantively added

to the intrinsic record as it relates to the presence of RAM.  *Id*.  The court rejected

e.Digital's arguments, explaining that this Court's decision in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.* ("*Aspex Eyewear I*") established that preclusion properly applies when the claims at issue are "merely new versions of claims that were part of the…patent prior to its reexamination." 672 F.3d 1335, 1340-41 (Fed. Cir. 2012). As to the alleged new intrinsic record, the court noted that e.Digital's basis for its position, the discussion of a microprocessor, failed to add new material to the record because a microprocessor was disclosed as part of the invention in the specification, and because there was not any substantive discussion of RAM during the reexamination. A51-A52.

The district court further noted that the USPTO was aware of the *Pentax* court's construction and that e.Digital made no effort to amend the "sole memory" limitation or otherwise argue that the construction was wrong. A52.[3]

## IV.  THE DISTRICT COURT ENTERS JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b)

After the Collateral Estoppel Order, e.Digital and GoPro, as well as the other defendants, agreed that the '774 patent should be withdrawn because e.Digital could not prove that any of the accused products infringe any claim in the '774 patent under the *Pentax* court's construction of the "sole memory" limitation. Each defendant individually negotiated with e.Digital regarding partial judgment

---

[3] The district court also addressed the application of collateral estoppel as it relates to U.S. Patent No. 5,839,108, but because that issue is inapplicable to GoPro, it will not be addressed in this brief.

of non-infringement of the '774 patent to be filed in each case.  *See* A1009, A1019, A1025.  Aside from the Huawei judgment, each of those judgments specifically excluded any right to an immediate appeal of the Collateral Estoppel Order, to avoid the possibility of piecemeal appeals of an issue that affected all of the parties.  *See*, *e.g.*, A1015-A1016, A1031-A1034.

During GoPro's negotiations with e.Digital, e.Digital ***never*** advised GoPro that e.Digital had already reached an agreement with Huawei that would allow e.Digital to immediately appeal the Collateral Estoppel Order to this Court. A1341.  In fact, e.Digital's counsel expressly represented to GoPro's counsel that e.Digital had no intent of seeking an immediate appeal of the Collateral Estoppel Order.  *Id*.  As e.Digital's counsel later acknowledged, this representation was inaccurate.  A1381.  Prior to making that representation, and unbeknownst to GoPro, e.Digital and Huawei settled the claims between them and entered into an agreement whereby e.Digital was able to take an immediate appeal of the Collateral Estoppel Order.[4]  A1341.

Based on e.Digital's representation regarding its lack of intent to immediately appeal the Collateral Estoppel Order, and recognizing that under the

---

[4] The Notice of Settlement between e.Digital and Huawei actually suggested that all claims had been dismissed.  *See* A1047-A1048 (noting that the notice stated that the parties "anticipate filing voluntary dismissals and/or a stipulated judgment as to their claims and counterclaims in this matter no later than October 7, 2013.").

district court's claim construction of the "sole memory" limitation GoPro was not liable for infringement of the '774 patent, e.Digital and GoPro jointly moved for entry of a partial judgment addressing the '774 patent on September 27, 2013. A1019-A1023. Because any determination by this Court regarding the Collateral Estoppel Order would necessarily impact GoPro's rights, after learning of e.Digital's appeal of the collateral estoppel issue to this Court, GoPro along with other defendants prepared a motion to amend the partial judgments to certify those judgments of non-infringement pursuant to Federal Rule of Civil Procedure 54(b).[5] A1037-A1040, A1335-A1339.

The district court granted the motion to amend the partial judgments on January 7, 2014 and entered an Amended Partial Judgment as to GoPro. A1. Because the Collateral Estoppel Order resolved the dispute among the parties as to e.Digital's claim of infringement of the '774 patent, pursuant to stipulation between GoPro and e.Digital, the district court dismissed GoPro's counterclaims and defenses regarding the '774 without prejudice. A2 at ¶ 6. The district court also expressly found that there was "no just reason for delaying entry of" judgment as to the '774 patent and that the judgment was "final pursuant to Federal Rule of Civil Procedure 54(b)." A3 at ¶ 10. The present appeal followed.

---

[5] Apple filed the motion, and GoPro joined it. Apple settled with e.Digital before the hearing on the motion.

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY HELD THAT COLLATERAL ESTOPPEL PRECLUDED E.DIGITAL FROM RELITIGATING CLAIM CONSTRUCTIONS DETERMINED BY THE COLORADO COURT

#### A. Legal Standard

The term "issue preclusion" encompasses the doctrine of "collateral estoppel." *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008). "Collateral estoppel 'precludes a plaintiff from relitigating identical issues by merely switching adversaries' and precludes a plaintiff 'from asserting a claim that the plaintiff had previously litigated and lost against another defendant.'" *Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) ("*Aspex Eyewear II*") (*quoting Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 (Fed. Cir. 1987) ("The prior determination of certain issues, including the issues of claim construction and of infringement by [one accused model] and non-infringement by [another accused model], bars judicial redetermination of those issues.").

The Federal Circuit reviews a ruling of collateral estoppel *de novo*. *See Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003). Collateral estoppel is not unique to patent law, therefore, regional circuit precedent guides determinations of collateral estoppel in patent cases. *Aspex Eyewear II*, 713

F.3d at 1380. "However, for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable." *Id*.

In the Ninth Circuit, collateral estoppel applies if: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against which collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000); *see also Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011).

e.Digital does not challenge the second or third prongs; its appeal is centered on the identity of issues required by the first prong.

Whether the issues in the previous and this litigation are identical involves the Court's construction of the "sole memory" limitation of the claims. "Claim construction is a question of law that may require determination of underlying facts." *Del Mar Avionics,* 836 F.2d at 1324. e.Digital does not appeal the construction itself or the ultimate finding of non-infringement, which was stipulated by the parties given the Court's claim construction. *See* Br. at 3.

**B.** **The District Court Properly Applied Collateral Estoppel to the Construction of the Sole Memory Limitation**

Given e.Digital's involvement in the *Pentax* litigation, the settlements following claim construction, and the fact that precisely the same claim limitation was at issue both in the *Pentax* action and this action, the district court correctly

determined that the doctrine of collateral estoppel barred e.Digital from litigating the construction of the "sole memory" limitation again.

No dispute exists that the second and third elements—finality of the judgment and the same party—are satisfied. e.Digital challenges the district court's Collateral Estoppel Order only the ground that the issues in the *Pentax* and the present litigation were not identical. Br. at 33-46. This Court, therefore, need only address the district court's determination as to the first element—whether the issues in the two litigations were identical. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 2062 (2007) (argument not raised and fully developed in an appeal brief is waived).

As to the first element, the claim construction issues addressed in the two actions involved the same claim terms of the same patent. In *Pentax*, the court construed the phrase: "flash memory module which operates as sole memory of the received processed sound electrical signals" recited in claims 1 and 19 of the '774 patent. A584-A598. The *Pentax* court based its constructions of the "sole memory" limitation on a detailed analysis of the '774 patent's specification and its prosecution history, including e.Digital's addition of the "sole memory" limitation during prosecution specifically to overcome prior art-based rejections. *Id.*

During reexamination of the '774 patent, e.Digital cancelled independent claims 1 and 19, and replaced them with independent claims 33 and 34. Claims 33

and 34 included additional limitations necessary to overcome prior art references addressed during the reexamination, but the "sole memory" limitation remained intact in both claims. The table below shows that the entire claim elements in which the "sole memory" limitation appears in claims 1 and 19 are identical to those of claims 33 and 34 respectively.

| Claim 1 | Claim 33 |
|---|---|
| a receiving socket electrically coupled to the memory control circuitry and configured for electrical coupling with a *flash memory module which operates as sole memory of the received processed sound electrical signals* and is capable of retaining recorded digital information for storage in nonvolatile form; | a receiving socket electrically coupled to the memory control circuitry and configured for electrical coupling with a *flash memory module which operates as sole memory of the received processed sound electrical signals* and is capable of retaining recorded digital information for storage in nonvolatile form; |
| Claim 19 | Claim 34 |
| a *flash memory module which operates as sole memory of the received processed sound electrical signals* and is capable of retaining recorded digital information for storage in nonvolatile form; | a *flash memory module which operates as sole memory of the received processed sound electrical signals* and is capable of retaining recorded digital information for storage in nonvolatile form; |

As e.Digital admits, "[i]t is undisputed that these exact words are in both former claim 1 (which was subject to construction in the Colorado Case) and new claim 33 of the '774 patent (which is asserted in the San Diego District Court case)." Br. at 34. "[I]t is irrelevant whether the [] claims now in suit contain additional terms that were not previously construed." *Aspex Eyewear II,* 713 F.3d

at 1382. The determinative issue is whether the same *issues*, not the same claims, were litigated in the earlier action. *Id*. ("it is the issues litigated, not the specific claims around which the issues were framed, that is determinative") (quoting *Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1372 (Ct. Cl. 1975)). Therefore, the *issue* of construction of the "sole memory" limitation was identical to the issue litigated and resolved in the *Pentax* litigation. *See Aspex Eyewear II*, 713 F.3d at 1381-82; *Int'l Gamco, Inc. v. Multimedia Games Inc.*, 732 F. Supp. 2d 1082, 1090 (S.D. Cal. 2010) (finding that the first element is "clearly met" where the same patent and claim terms were at issue in both the prior and the present litigations).

In *Aspex Eyewear II*, this Court rejected the same argument offered here by e.Digital—that is, the application of collateral estoppel is improper when the later action involves different claims that contain additional claim limitations. 713 F.3d at 1381-82. The later action in *Aspex Eyewear II* involved different claims containing additional claim terms not construed in the earlier action. *Id*. But those claims included the same claim limitation—"retaining mechanism"—previously construed. *Id*. at 1381 (finding that "every claim asserted against [defendant] contains the same 'retaining mechanism' limitation, in the same context, that the Federal Circuit in *Altair III* found dispositive of non-infringement."). Because the non-infringement finding in the earlier case resulted from the construction of the

"retaining mechanism" limitation also present in the newly-asserted claims, this Court held that it was irrelevant that the claims contained additional terms. *Id*. (holding that "the assertion of different claims in a subsequent suit does not create a new 'issue' to defeat preclusion.")

Here, e.Digital asserted claims 33 and 34, not at issue in the *Pentax* litigation, and these claims contain additional limitations. A50 n.1. But like in *Aspex Eyewear II*, the newly-asserted claims contain the identical "sole memory" limitation that was construed in the prior litigation. Collateral estoppel thus applies.

With all three of the Ninth Circuit's collateral estoppel factors being satisfied, the district court properly ruled that e.Digital was barred from relitigating the *Pentax* court's claim construction ruling of the "sole memory" limitation in the '774 patent.

### C.    The Reexamination of the '774 Patent Cannot Impact the Identity of the Issues

The crux of this appeal is whether the reexamination proceedings involving the '774 patent that took place after the *Pentax* court's construction of the "sole memory" limitation can now affect in some way the construction of that term. The district court properly determined that nothing in the reexamination of the '774 patent impacted the proper construction of the "sole memory" limitation. A51-A52. This is consistent with precedent from this Court. *See Aspex Eyewear II*,

713 F.3d at 1381-82 (applying collateral estoppel when no materially different argument was unavailable in the earlier action).  In this instance, the reexamination proceedings cannot affect the *Pentax* construction as a matter of law.

First, based on its review of the specification, the *Pentax* court held that the inventor "acted as his own lexicographer" in defining "processed…sound signals" in such a manner which, when combined the plain meaning of "sole memory," excluded the use of RAM.  A592-A593.  But "[a]n inventor's right to be his own lexicographer ends when the patent issues."  *See Gillette Co. v. S. C. Johnson & Son Inc.*, 12 U.S.P.Q.2d 1929, 1940 (D. Mass. 1989), *aff'd*, 919 F.2d 720, 16 U.S.P.Q.2d 1923 (Fed. Cir. 1990).  Thus, the after-issuance statements e.Digital may have made in the reexamination proceeding cannot change the inventor's prior lexicographic definition.

Second, in construing the "sole memory" limitation, the *Pentax* court also found that "Mr. Norris admittedly sought to claim a device that abandoned reliance on RAM, insofar as Mr. Norris' statements to the USPTO in July 1995 essentially admit as much."  A595.  "Reexamination may entail changes in the claims, except that the claims cannot be enlarged."  *Bloom Eng'g v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997) (citing 35 U.S.C. § 305).  "A claim is enlarged if it includes within its scope **any subject matter that would not have infringed the original patent**." *In re Freeman*, 30 F.3d 1459, 1464 (Fed. Cir. 1994). "A claim

that is broader **in any respect** is considered to be broader than the original claims even though it may be narrower in other respects." *Id*. e.Digital argues that several figures it submitted to the PTO in the reexamination "representing the invention demonstrate[s] that RAM is a component of the control circuitry disclosed in the independent claims of the '774 patent." Br. at 13; *see id*. at 42-43. e.Digital also argues that "the use of RAM by the microprocessor in the new claim 33" could lead to an interpretation that "the microprocessor utilizes RAM while engaging the CODEC, DSP, memory control functions, and storing data." Br. at 43. But no evidence from the reexamination proceeding can enlarge the scope of the claims to cover the use of RAM as e.Digital argues. *See Bloom Eng'g*, 129 F.3d at 1249. Thus, neither the submitted diagrams, the additional language of claim 33, or any "potential briefing and expert commentary" about them can be relevant to construe the claims to be broader "in any respect."

e.Digital argues that "[c]ontrary to what the Appellees would argue, with the addition of new limitations comes a narrowing of the scope of the claims, not an expansion." Br. at 44. This argument is plainly contrary to well established law. *Senju Pharm. Co. v. Apotex Inc.*, No. 2013-1027 (Fed. Cir. Mar. 31, 2014) ("[t]he reexamined claim cannot be broader in any respect, even if it is narrowed in other respects.") (citing *Predicate Logic, Inc. v. Distributive Software, Inc.,* 544 F.3d 1298, 1303 (Fed. Cir. 2008)); *see also Medtronic, Inc. v. Guidant Corp.*, 465 F.3d

1360, 1374 (Fed. Cir. 2006) ("A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects."); *Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1344 (Fed. Cir. 2002) ("A reexamined claim that is broader in any respect is considered to be broader than the original claim even though it may be narrower in other respects"); *Hockerson-Halberstadt, Inc. v. Converse Inc.,* 183 F.3d 1369, 1373, 51 U.S.P.Q.2d 1518, 1521 (Fed. Cir.1999) (same); *In re Freeman*, 30 F.3d at 1464 (cited above). "As a result, a reexamined patent claim cannot contain within its scope any product or process which would not have infringed the original claims." *Senju Pharm.*, No. 2013-1027 at 14.  e.Digital's reliance on case law from this Court and from the Southern District of California to support its untenable position is misplaced as those cases simply state the obvious, that adding limitations to a claim is a substantive change to the claim. *See* Br. at 44-45.  But, consistent with the case law cited above, adding limitations while at the same time enlarging the scope of the claim to cover RAM would result in a broader claim forbidden by the reexamination statute.  Thus, none of the reexamination evidence e.Digital alleges would be considered to reach a broader claim construction could be relied upon by the district court to do so as a matter of law. *Bloom Eng'g*, 129 F.3d at 1249. Hence, the claim construction issues in the prior and this litigation are indeed identical.

Moreover, "examining the substance of th[e] issues," as directed by the

Court in *Aspex Eyewear II*, reveals that in fact the "new" intrinsic record provided

by the reexamination has no relation to the construction of the "sole memory"

limitation. 713 F.3d at 1382. This is not surprising because the "sole memory"

limitation was not the focus of the substantial new question of patentability,

therefore nothing in the reexamination could have impacted that limitation. *See In

re Freeman*, 30 F.3d at 1468 (Fed. Cir. 1994) (amendments made in reexamination

are limited to issues raised by the question of patentability). The court below

found that the reexamination addressed issues concerning supplying power, not the

"sole memory" limitation at issue in the *Pentax* action. A51-A52. That was

precisely what the PTO and e.Digital focused on. The reexamination focused on

the "control logic circuitry" and "power source" claim elements. *See* A636-A648.

Following the first office action, e.Digital and the examiner conducted two

interviews. A639. The subject of both interviews was whether the recited "power

source" provided power to the "control circuitry" or "device." A639-A640. More

specifically, the patent owner argued that the power source delivered electrical

signals to the control circuitry, which in turn provided electrical power to the

device. *Id*. The patent owner and examiner addressed the same issues in the first

two responses and the responsive office action. *See* A640-A646 (examiner

responding to arguments concerning the power supply and control circuitry made

by the patentee in the response and supplemental response filed on 12/21/2011 and 01/19/2012).

Further, the drawing labeled Exhibit F, which is featured on page 41 of e.Digital's Brief, was not specifically discussed by e.Digital's expert in his declaration filed in the PTO proceedings. Instead, a version of that drawing that omitted RAM was reproduced in the body of the expert's declaration following a paragraph discussing an "important power saving feature" and that makes no mention of memory or RAM. *See* A840. In the end, the independent claims (now claims 33 and 34) were amended to recite that the power supply was coupled to the control circuitry, which in turn controlled the supply of power to other elements of the device. A772-A775. None of the rejections or arguments in these office actions and responses relate to the interpretation of the "sole memory" limitation, and thus fail to provide a basis to revisit the *Pentax* court's construction of that term.

e.Digital also argues that the express recitation of a microprocessor in the amended claims, which was not expressly recited in the prior claims, makes the reexamination proceedings relevant to the construction of the "sole memory" limitation. Br. at 41-43. But such an argument ignores the express finding of the *Pentax* court in arriving at its claim construction, something e.Digital did not appeal at the conclusion of that case. The *Pentax* court considered and expressly

rejected e.Digital's argument that a microprocessor of the claimed invention used

RAM, not flash memory, to perform computational tasks. A595-A597.

Specifically, the court held:

> Thus, a person skilled in the art and reading the '774 patent might initially be confused by the device's apparent abandonment of commonly-used RAM in support of microprocessor operations, but that same reader would then review the characteristics of the flash memory recited in the patent and realize that that flash memory could be addressed by the microprocessor in the same manner as ordinary RAM. Thus, the mere fact that the types of data-handling operations disclosed in the '774 patent would lead one skilled in the art to assume the presence of RAM does not render the patent's clear disclaimer of RAM to be misleading, as the patent clearly discloses the presence of a functional RAM-alternative.

A596-A597. In fact, dependent claims 15-17 of the originally issued patent, which

were part of the intrinsic record considered by the *Pentax* court, recite a

microprocessor. A259. Original claim 15 depends from claim 1 and adds

"wherein the control circuit includes a microprocessor…." *Id*. The amendment in

the reexamination added to claim 33 essentially the same language: "… and

control logic circuitry, which includes a microprocessor…." A264-A265. Thus,

the existence of a microprocessor is not new and fails to present a new issue

undermining the identicalness of the issues addressed by the *Pentax* court and the

district court below.

Accordingly, e.Digital cannot avoid the estoppel effect of the *Pentax* court's adverse claim construction ruling by arguing that the reexamination of the '774 patent makes the issues different, particularly when neither the PTO nor e.Digital raised any issues related to the "sole memory" limitation. Because both this case and the *Pentax* case involve the identical issue—the construction of the "sole memory" limitation—unaffected by the reexamination of the '774 patent, the lower court's determination on collateral estoppel was proper. Thus, this Court should affirm the judgment of non-infringement of the '774 patent entered in favor of GoPro.

**D.  Consideration of the Reexamination of the '774 Patent Was Proper and Necessary to Determine Whether the Claim Construction Issues Remained the Same**

e.Digital wrongly argues that the district court's consideration of "selected portions of the reexamination history…was beyond the scope of Appellees' collateral estoppel motion and thus improper." Br. at 40. The district court properly considered the reexamination proceeding to determine whether the issues concerning the "sole memory" limitation remained identical to those presented in the *Pentax* litigation. The inquiry to determine if the issues are identical requires "focusing on the issues, and examining the substance of those issues…." *Aspex Eyewear II*, 713 F.3d at 1382.

The district court here, focusing on the substance of the issues, properly considered the reexamination record to determine whether it provided any material evidence that would affect the construction of the previously litigated term. *See* A50-A52. In criticizing this approach, e.Digital appears to argue that a reexamination proceeding following an adverse claim construction categorically bars the application of collateral estoppel. *See* Br. at 38-40 (suggesting that review of a reexamination outside the context of *Markman* hearing is improper). But this criticism is squarely contrary to this Court's precedent. *See Aspex Eyewear II*, 713 F.3d at 1382. e.Digital's additional contention that the district court improperly converted the collateral estoppel motion into a "full-blown claim construction proceeding" similarly lacks any support.[6] Br. at 40, n. 3.

e.Digital's wrongly asserts that *Illumina, Inc. v. Complete Genomics, Inc.*, 2012 U.S. Dist. LEXIS 15268 (N.D. Cal. Feb. 8, 2012), supports its position. In *Illumina*, the patentee narrowed the scope of the specific claim limitations at issue. *Id*. at 30-31 ("During re-examination of the '597 patent, Illumina did narrow 'repeating' to extending a '(new) initializing oligonucleotide."). In light of the fact that the specific claim limitation at issue had been addressed and narrowed during the reexamination, the application of collateral estoppel was improper. But as the

---

[6] Although not determinative, it is worth noting the inconsistency in e.Digital's criticism of the district court for considering the reexamination of the '774 patent outside the context of a claim construction proceeding and for purportedly turning the collateral estoppel motion into a "full-blown claim construction proceeding."

district court found here, nothing occurred during the reexamination of the '774 patent that could possibly impact the "sole memory" limitation. A51-A52.

e.Digital's reliance on *Golden Bridge Technology, Inc. v. Apple Inc.*, 937 F. Supp. 2d 490 (D. Del. 2013) fails because it is a district court case, not even in the Ninth Circuit, that conflicts with clear precedent of this Court. *See Aspex I*, 672 F.3d at 1341-42 (finding that insubstantial changes made to a claim during reexamination did not bar preclusion).

Other Courts have similarly evaluated reexamination proceedings to ascertain whether the issue presented before the reexamination remains identical to that presented following the proceeding. *See*, *e.g.*, *Aspex Eyewear I*, 672 F.3d at 1340-41 (finding that amendments to claims made during reexamination to be insubstantial and precluding the patentee from relitigating the claims). In this case, the district court considered the portions of the reexamination proceeding submitted by both e.Digital and the defendants to determine whether anything in the reexamination necessitated the court to revisit the *Pentax* court's construction of the "sole memory" limitation. A50-A51. Thus, the district court properly considered the effect of the reexamination on the previously litigated issue and determined that it had no effect. *Aspex Eyewear I*, 672 F.3d at 1340-41.

In support of its position, e.Digital also relies on *3M Innovative Props. Co. v. Avery Dennison Corp.,* 350 F.3d 1365 (Fed. Cir. 2003) and *Vitronics Corp. v.*

*Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996). Neither supports e.Digital's position. *3M Innovative* stands only for the basic proposition that a claim term's meaning must be construed in light of all intrinsic evidence. *3M Innovative,* 350 F.3d at 1371. *Vitronics* similarly states that such intrinsic evidence includes asserted and non-asserted claims. *Vitronics*, 90 F.3d at 1582. The district court "examined the substance of the issues" by reviewing the reexamination record and determined that the reexamination offered no new intrinsic evidence relevant to the meaning of the "sole memory" limitation. A50-A51. As such, consistent with *3M Innovative and Vitronics'* teaching, the *Pentax* court's construction of the "sole memory" limitation was based on the relevant intrinsic evidence and thus needed no reconsideration.

## II. BASIC CIVIL PROCEDURE LAW MAKES CLEAR THAT THE APPEALED JUDGMENT AS TO GOPRO IS FINAL

The amended judgment entered by the district court as to GoPro constitutes a final judgment with sufficient finality for the purpose of Federal Rule of Civil Procedure 54(b). The court's determination as to finality is reviewed de novo, and the finding of no just reason to delay is reviewed for abuse of discretion. *Spraytex, Inc. v. DJS&T*, 96 F.3d 1377, 1379 (Fed. Cir. 1996).

Following the issuance of the Collateral Estoppel Order, GoPro and e.Digital entered into a stipulated non-final partial judgment, wherein e.Digital agreed that GoPro's products did not infringe the '774 patent in light of the claim construction

issued by the *Pentax* court. A41 at ¶ 4. The stipulated judgment specifically stated that it was non-final and not immediately appealable. A42 at ¶ 10. To make it clear that GoPro did not intend to waive its counterclaims or defenses as to the '774 patent in the event that this Court reversed the Collateral Estoppel Order, the parties expressly stated that those counterclaims and defenses were dismissed without prejudice. *Id*. at ¶ 6. After GoPro learned that e.Digital intended to appeal the Collateral Estoppel Order by virtue of its settlement with Huawei, GoPro moved the court to amend the stipulated judgment to certify it pursuant to Rule 54(b). The court granted GoPro's motion and entered an amended judgment certified under Rule 54(b). A1-A3.

Pursuant to the amended judgment, a judgment of non-infringement of the '774 patent was entered in favor of GoPro and against e.Digital. A1-A3. The judgment of non-infringement obviously terminated e.Digital's claims against GoPro as to the '774 patent. GoPro's counterclaims and defenses relating to the '774 patent, except as they related to attorneys' fees and costs, were dismissed from the action without prejudice. A2 at ¶¶ 6, 8. As such, all claims and defenses between the parties, with the exception of any potential motion for attorneys' fees and costs by GoPro, were fully and finally resolved. *See Air Turbine Technology, Inc. v. Atlas Copco AB*, 410 F. 3d 701, 707 (Fed. Cir. 2005) (recognizing that the

lower court's judgment was final where the district court stayed the defendant's motion for attorneys' fees and costs pending appeal).

e.Digital argues that the judgment entered as to GoPro lacks sufficient finality because the "stipulated partial judgments provide that they are: 1) without prejudice as to either party; and 2) the parties reserve all their claims, arguments and defenses in the event that the collateral estoppel orders are reversed, changed or modified." Br. at 52.

First, e.Digital plainly misrepresents the record. The judgment of non-infringement was not entered "without prejudice as to either party": " the Court enters this Amended Partial Judgment in favor of GoPro on e.Digital's claim for infringement of claims 33 and 34 of the '774 patent and any claims depending therefrom." A2 at ¶ 7. That issue was plainly with prejudice. The partial judgment was without prejudice to GoPro's counterclaims and defenses; "the Parties' right to appeal" the Court's orders; and "to any claim for attorneys' fees and /or costs." *Id.* at ¶¶ 6, 8.

Because the judgment of non-infringement, if not reversed by this Court, resolved e.Digital's claim as to the '774 patent, GoPro's agreed to dismiss its counterclaims without prejudice. A2 at ¶ 6. But such dismissal fails to create a jurisdictional problem. *See*, *e.g.*, *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004) ("A district court judge faced with an invalidity

counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion."[7]); *Nystrom v. TREX Co.,* 339 F.3d 1347, 1351 (Fed. Cir. 2003) (explaining that a permissible approach to create finality is to dismiss counterclaims without prejudice). e.Digital tellingly fails to cite even a single case suggesting otherwise.

To the extent that e.Digital takes issue with the language that all claims, arguments and defenses are reserved in the event that this Court vacated or reversed the judgment of non-infringement, such language did not stay any claims—because the counterclaims were dismissed. It simply recites the parties' intent not to waive any arguments or defenses in the event that the issue of infringement is revisited by the trial court. As addressed above, the claim of infringement of the '774 patent and GoPro's counterclaims related thereto were resolved, either by judgment or dismissal.

Given that both e.Digital's claims against GoPro as to the '774 patent were resolved and GoPro's counterclaims were dismissed, the court found that the claims as to that patent were final. A3 at ¶ 10. The court also determined that there was no just reason for delay, and certified the judgment final pursuant to Rule

---

[7] In *Liquid Dynamics*, the defendant protested the district court's dismissal of the invalidity counterclaim. *Liquid Dynamics*, 355 F.3d at 1363. Here, however, the parties stipulated to the dismissal without prejudice of GoPro's counterclaims and defenses.

54(b).  *Id*.  The judgment thus became an appealable judgment which e.Digital

accordingly appealed.

## III.    CONCLUSION

For the foregoing reasons, the district court's judgment of non-infringement

of the '774 patent in favor of Defendant-Appellee should be affirmed.


Dated:  June 5, 2014                    FENWICK & WEST LLP


                                        By:    /s/ Hector J. Ribera
                                                Hector J. Ribera

                                        *Attorneys for Defendant-Appellee*
                                        *Woodman Labs, Inc. (now GoPro, Inc.)*

## PROOF OF SERVICE

I hereby certify that on this June 5, 2014, I caused a copy of the foregoing

**DEFENDANT-APPELLEE WOODMAN LABS INC.'s** brief to be served by

electronic means via the Court's CM/ECF system on all counsel registered to

receive electronic notices

                     */s/ Hector J. Ribera*
                     Hector J. Ribera

                     *Defendant-Appellee*
                     *Woodman Labs, Inc. (now GoPro, Inc.)*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  This brief contains 7,259 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), according to the word processing program used to prepare it.

2.     The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Civil Procedure 32(a)(6).  The brief uses a proportionally spaced typeface using Microsoft Office Word Version 2010 with 14-point Times New Roman typeface.


Dated:  June 5, 2014                    FENWICK & WEST LLP


                                        By:  */s/ Hector J. Ribera*
                                             Hector J. Ribera

                                        FENWICK & WEST LLP
                                        801 California Street
                                        Mountain View, CA  94041
                                        hribera@fenwick.com
                                        (650) 988-8500

                                        *Attorneys for Defendant-Appellee*
                                        *Woodman Labs, Inc. (now GoPro, Inc.)*