# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

## E.DIGITAL CORPORATION,
*Plaintiff-Appellant,*

v.

## ZTE CORPORATION, ZTE (USA) INC., PANTECH WIRELESS, INC., PANTECH CO. LTD., and WOODMAN LABS INC.,
*Defendants-Appellees.*

---

## 2014-1239, 1242, 1243

---

Appeals from the United States District Court for
the Southern District of California in
No. 3:13-cv-00781-DMS-WVG, Judge M. Sabraw

---

## BRIEF FOR DEFENDANTS-APPELLEES
## PANTECH WIRELESS, INC. AND PANTECH CO. LTD.

---

Kevin M. O'Brien
D. James Pak
Matt Dushek
Yi Fang
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006

Telephone: (202)452-7000
Fax: (202) 452-7074
kevin.obrien@bakermckenzie.com
d.james.pak@bakermckenzie.com
matt.dushek@bakermckenzie.com
yi.fang@bakermckenzie.com

*Counsel for Defendants-Appellees*
*Pantech Co., Ltd. and*
*Pantech Wireless, Inc.*

# CERTIFICATE OF INTEREST

Counsel for the Defendants-Appellees Pantech Co., Ltd. and Pantech Wireless, Inc. certifies the following:

1.      The full name of every party or amicus represented by me is:

        Pantech Co., Ltd. and Pantech Wireless, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

        As indicated in item 1

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

        Pantech Co., Ltd. is the parent company of Pantech Wireless, Inc.. Publicly held companies that own more than 10% of the stock of Pantech Co., Ltd. are Korea Development Bank, Qualcomm Incorporated, and Samsung Electronics Co., Ltd..

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

        Kevin M. O'Brien, D. James Pak, Colin H. Murray, Matt Dushek, and Yi Fang of Baker & McKenzie LLP.

Dated:  June 5, 2014                    By: */s/  Kevin M. O'Brien*
                                           Kevin M. O'Brien

                                        *Counsel for Defendants-Appellees*
                                        Pantech Co., Ltd. and
                                        Pantech Wireless, Inc.

i

# TABLE OF CONTENTS

I.   STATEMENT OF RELATED CASES.................................................1

II.  STATEMENT OF JURISDICTION ...............................................4

III.  STATEMENT OF THE CASE .....................................................5

IV.  STATEMENT OF THE FACTS ...................................................7

   A.  e.Digital's Prior Litigations Involving The '774 Patent ...............................7

   B.  U.S. Patent No. 5,491,774 .......................................................9

   C.  Reexamination of the '774 Patent ...........................................10

   D.  U.S. Patent No. 5,839,108 .....................................................13

V.  SUMMARY OF THE ARGUMENT.............................................14

VI.  ARGUMENT..........................................................................17

   A.  Standard of Review .................................................................17

   B.  Legal Standards of Collateral Estoppel.......................................18

   C.  The District Court Correctly Concluded that the '774 Patent Claim Construction Issues Are Identical to Those Litigated in the Colorado Case........19

   D.  The Claims of the '774 Patent at Issue are Invalid if Collateral Estoppel Does Not Apply ...................................................24

   E.  e.Digital's Same Microprocessor Argument Failed In Colorado ..............26

   F.  The District Court Correctly Applied Collateral Estoppel to the '108 Patent Because the Identical Issue Was Already Adjudicated. .......................................28

   G.  The District Court Was Within its Discretion to Amend the Stipulated Partial Judgments .................................................36

H.     The District Court Made Adequate Findings to Conclude the Stipulated Judgments Met The Finality Standard of Rule 54(b) ..........................................41

VII.  CONCLUSION ................................................................................................43

# TABLE OF AUTHORITIES

**Federal Cases**

*Acha v. Beame,*
    570 F.2d 57 (Fed. Cir. 1978) ........................................ 37

*Applied Med. Res. Corp. v. United States Surgical Corp.,*
    435 F.3d 1356 (Fed. Cir. 2006) .......................................... 19, 29

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,*
    672 F.3d 1335 (Fed. Cir. 2012) ....................................... 19, 29

*Aspex Eyewear, Inc. v. Zenni Optical LLC,*
    713 F.3d 1377 (Fed. Cir. 2013) .......................................... 18, 29

*Brain Life, LLC v. Elekta Inc.*
    2014 U.S. App. LEXIS 5390 (Fed. Cir. March 24, 2014) ... 33, 34

*Curtiss-Wright Corp. v. General Electric Co.,*
    446 U.S. 1 (1980) .......................................... 18, 37, 38

*Del Mar Avionics, Inc. v. Quinton Instrument Co.,*
    836 F.2d 1320 (Fed. Cir. 1987) .................................... 18

*Doe v. United States,*
    513 F.3d 1348 (Fed. Cir. 2008) ................................... 42

*In re Freeman,*
    30 F.3d 1459 (Fed. Cir. 1994) ...................................... 24, 27, 28

*Gibson Guitar Corp. v. 745 LLC,*
    No. 3:11-0058, 2012 WL 90445 (M.D. Tenn. Jan. 11, 2012) 21, 22

*Golden Bridge Tech., Inc. v. Apple Inc.,*
    937 F. Supp. 2d 490 (D. Del. 2013) .................................... 23, 24

*Kapusta v. Gale Corp.,*
    457 F. Supp. 2d 1051 (E.D.Cal. 2006) ............................... 40, 41

*Kearns v. Gen. Motors Corp.,*
    94 F.3d 1552 (Fed. Cir. 1996) ....................................... 34, 35, 36

*Morrison–Knudsen Co., Inc. v. Archer*,
   655 F.2d 962 (9th Cir. 1981) ................................................. 18, 39

*Ohio Willow Wood Co. v. Alps S., LLC*,
   735 F.3d 1333 (Fed. Cir. 2014) ...............................29, 34, 35, 36

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322, 329 (1979)........................................................... 18

*Paulo v. Holder*,
   669 F.3d 911 (9th Cir. 2011) .................................................... 19

*Reese v. Verizon Cal., Inc*,
   498 Fed. Appx. (2012).............................................................. 17

*Sharper Image Corp. v. Neotec, Inc.*,
   373 F. Supp. 2d 993 (N.D. Cal. 2005)...........................24, 26, 28

*Spiegel v. Trustees of Tufts College*,
   843 F.2d 38 (9th Cir. 1988) ..........................................37, 38, 39

*Spraytex Inc. v. DJS&T & Homax Corporation*,
   96 F.3d 1377 (Fed. Cir. 1996) .............................................38, 42

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).................................................................. 18

**Federal Statutes**
   35 U.S.C. § 305 ........................................................16, 24, 26

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5, Defendants-Appellees Pantech Co., Ltd. and Pantech Wireless, Inc. (collectively hereinafter "Pantech") state that no appeal in or from *e.Digital Corp. v Pantech Co., Ltd. and Pantech Wireless, Inc.*, Case No. 13-cv-00023-DMS-WVG (S.D. Cal.) was previously before this or any other appellate court.

In addition, Pantech states that the Order Granting Defendants' Motion To Apply Collateral Estoppel dated August 21, 2013 applied to the following fifteen cases before Judge Dana M. Sabraw of the Southern District of California:

- *e.Digital Corporation v. SanDisk Corporation*, Case No. 3:12-cv-02698-DMS-WVG

- *e.Digital Corporation v. Philips Electronics North America Corporation*, Case No. 3:12-cv-02701-DMS-WVG

- *e.Digital Corporation v. GPX, Inc.*, Case No. 3:12-cv-02825-DMS-WVG

- *e.Digital Corporation v. Mach Speed Technologies, LLC*, Case No. 3:12-cv-02877-DMS-WVG

- *e.Digital Corporation v. Osram Sylvania, Inc.*, Case No. 3:12-cv-02891-DMS-WVG

- *e.Digital Corporation v. Woodman Labs, Inc.*, Case No. 3:12-cv-02899-DMS-WVG

1

- *e.Digital Corporation v. MiTAC Digital Corporation*, Case No. 3:12-cv-02997-DMS-WVG

- *e.Digital Corporation v. Pantech Wireless, Inc.*, Case No. 3:13-cv00023-DMS-WVG

- *e.Digital Corporation v. Fujifilm Corporation*, Case No. 3:13-cv-00112-DMS-WVG

- *e.Digital Corporation v. JVC Americas Corp.*, Case No. 3:13-cv-00356 DMS-WVG

- *e.Digital Corporation v. Motorola Mobility LLC*, Case No. 3:13-cv-00780-DMS-WVG

- *e.Digital Corporation v. Research in Motion Limited*, Case No. 3:13-cv-00781-DMS-WVG

- *e.Digital Corporation v. ZTE Corporation*, Case No. 3:13-cv-00782 DMS-WVG

- *e.Digital Corporation v. Huawei Technologies Co., Ltd.*, Case No. 3:13 cv-00783-DMS-WVG

- *e.Digital Corporation v. Apple Inc.*, Case No. 3:13-cv-00785-DMS-WVG

Of these fifteen cases, five have been appealed to this Court:

- *e.Digital Corporation v. Futurewei Technologies, Inc.*, Federal Circuit Case No. 2014-1019 ("the *Huawei* case")

- e.Digital *Corp. v. Research in Motion Ltd.*, Federal Circuit Case No. 2014-1236 ("the *Blackberry* case")

- *e.Digial Corp. v. ZTE Corp.*, Federal Circuit Case No. 2014-1239 (Lead Appeal) ("the *ZTE* case")

- *e.Digital Corp. v. Pantech Co., Ltd. and Pantech Wireless, Inc.*, Federal Circuit Case No. 2014-1242 ("the *Pantech* case")

- *e.Digital Corp. v. Woodman Labs, Inc.*, Federal Circuit Case No. 2014-1243 ("the *GoPro* case")

Because these cases arise from the same District Court Order, this Court has consolidated the *Blackberry* case, the *ZTE* case, the *Pantech* case, and the *GoPro* case, and considers the *Huawei* case a comparison case to the consolidated appeal. The appeal of the *Blackberry* case was dismissed as withdrawn on March 27, 2014. On May 22, 2014, Appellant e.Digital filed a consent Motion to Dismiss the Lead Appeal from the *ZTE* case. This motion is still pending.

# STATEMENT OF JURISDICTION

The District Court entered an order in the cases that remain pending in the Statement of Related Cases section above, granting a motion to amend or correct judgments and stay actions pending appeal to "ensure[] that the collateral estoppel order will be appealed only once." (Order Granting Motion to Amend at p. 7; *e.Digital Corporation v. Woodman Labs, Inc.*, Dkt. No. 80, Case No. 3:12-cv-02899-DMS-WVG.) Pantech and other defendants did not join the motion to amend the non-final stipulated partial judgments. The District Court amended all the judgments so that the defendants' appeals based on the same order applying collateral estoppel may be timely consolidated before this Court. e.Digital now challenges whether this Court has jurisdiction to hear this appeal and alleges that the District Court did not have authority to amend the non-final judgments into final judgments appealable to this Court.

## STATEMENT OF THE CASE

U.S. Patent No. 5,491,774 ("the '774 patent") and U.S. Patent No. 5,839,108 ("the '108 patent") relate to handheld devices in which voice recordings and dictation are saved on a specific form of memory, "flash" memory.

e.Digital previously asserted the '774 patent and related patents in the District of Colorado. The parties fully briefed claim construction issues and conducted a whole-day *Markman* hearing that included live fact and expert testimony. Based on the briefing and evidence it heard, the Colorado Court construed the "sole memory" claim limitation as excluding "RAM and other memory systems." e.Digital did not appeal the Colorado Court's claim construction ruling. Instead, e.Digital chose to settle with the remaining Colorado defendants and the case closed on October 26, 2011.

On January 4, 2013, e.Digital filed suit against Defendants-Appellees Pantech Co., Ltd. and Pantech Wireless, Inc., asserting the '774 and '108 patents, in the District Court for the Southern District of California (hereinafter the "District Court"). All of the asserted claims of the '774 and '108 patents include the identical "sole memory" limitation construed by the Colorado Court. Pantech, together with the defendants in the Statement of Related Cases section above, filed a motion in the District Court to collaterally estop e.Digital from asserting a

different construction for the "sole memory" limitation found in the '774 and '108 patents than that determined by the Colorado Court.

The District Court agreed with Pantech and the other defendants and entered an order applying the issue preclusion doctrine to the "sole memory" limitation. Following the District Court's order, e.Digital separately negotiated stipulated partial judgments of non-infringement in all the cases. Among all defendants e.Digital negotiated with, only Huawei reached a stipulation to a final partial judgment resulting in a judgment appealable to this Court, which was entered on October 7, 2013. e.Digital then immediately filed the appeal of the *Huawei* case, Federal Circuit Case No. 3:13:CV-00783 (the "Huawei Appeal"), on October 10, 2013.

When the Huawei Appeal was filed in this Court, the stipulated partial judgments as to all other defendants in the related cases were non-final and could not be appealed. In order to "ensure[] that the collateral estoppel order will be appealed only once," the District Court granted a motion to amend filed by Apple and joined by GoPro, and amended all the remaining non-final judgments into final appealable judgments including that of Pantech. *See* Order Granting Motion to Amend at p. 7; *e.Digital Corporation v. Woodman Labs, Inc.*, Dkt. No. 80, Case No. 3:12-cv-02899-DMS-WVG. e.Digital then appealed to this Court against Pantech and three other defendants.

6

## STATEMENT OF THE FACTS

e.Digital has omitted or mischaracterized material facts in its statements about the accused products, the state of the art, and the scope and prosecution history of the '774 and '108 patents. Particularly, this Court should take into account the impact of e.Digital's past assertion of the "sole memory" claim limitation set forth in both the '774 and '108 patents, which was not addressed in e.Digital's brief.

### A.       e.Digital's Prior Litigations Involving The '774 Patent

e.Digital previously asserted the '774 patent in two litigations. In *e.Digital Corp. v. Casio America, Inc. et al*, Case No. 08-cv-00093-DF-CE (E.D. Tex.), e.Digital asserted the '774 patent against seven consumer electronics manufacturers. The *Casio* defendants settled before the court issued any substantive orders and before *Markman* briefing began.

In *e.Digital Corp. v. Pentax of America, Inc.*, Civil Action No. 09-cv-2578 MSK-MJW (D. Col.), e.Digital asserted the '774 patent in the District of Colorado (herein "the Colorado Court") against 28 defendants that make and/or sell digital cameras, cellular phones, and/or smart phones. The Colorado case proceeded through a first phase of discovery, including expert discovery, in which the parties focused on claim construction issues. After completing claim construction discovery, e.Digital and the Colorado defendants fully briefed the claim

7

construction issues.  The Colorado Court conducted a one-day *Markman* hearing on January 28, 2011, which included live testimony from the lead inventor, expert testimony, and attorney argument.  The Colorado Court issued its claim construction ruling on June 28, 2011.  (A183-A198; *see also Pentax*, Dkt. No. 395; *Pentax*, 2011 WL 2560069.)

The Colorado Court's claim construction ruling discussed the technology disclosed in the '774 patent, considered the testimony of the lead inventor elicited by e.Digital at the *Markman* hearing, and analyzed the '774 patent's file history, including the fact that e.Digital had added the "sole memory" limitation during prosecution to overcome prior art-based rejections. (A584-A588.)  The Colorado Court noted in its claim construction ruling that "the Defendants stated, without objection from the Plaintiff, that there would be no need to construe [any] terms [other than the 'sole memory' term] if the Court were to construe the 'sole memory' term in favor of the Defendants.  Accordingly, as the ensuing discussion makes clear, the Court need only construe the 'sole memory' claim [term]." (A585.)

Based on the intrinsic and extrinsic evidence, including the live testimony at the *Markman* hearing, the Colorado Court construed the phrase "flash memory module which operates as sole memory" to require that "the device use **only** flash memory, not RAM or any other memory system, while engaging the CODEC, DSP

(as applicable), and memory control functions, as well as storing the fully-manipulated data." (A597-A598 (emphasis added).) The Colorado Court also construed the remainder of this claim limitation reciting "received processed sound electrical signals" to mean "the electrical signals that have been generated by the microphone and passed through the amplifier and gain control signals, but have yet to be converted by the CODEC." *Id.*

e.Digital settled with the remaining Colorado defendants soon thereafter, and the case was dismissed with prejudice on October 26, 2011. Neither e.Digital nor any of the Colorado defendants requested that the claim construction ruling be vacated.

### B.      U.S. Patent No. 5,491,774

e.Digital asserted the '774 patent against Pantech and other defendants in the District Court from which this appeal is based. The '774 patent was also at issue in the two prior litigations filed by e.Digital described above. The Colorado case included a case-dispositive claim construction ruling in which the Colorado court construed a key limitation of the '774 patent claims, *i.e.*, "a *flash memory* module which operates as *sole memory* of the received processed sound electrical signals" (referred to herein as the "sole memory" limitation).

The '774 patent is directed to a "record/playback device for use with a removable, interchangeable, flash memory recording medium which enables

9

extended recording comparable with tape cassette dictating equipment." (A516, Abstract.) The '774 patent's disclosure admits that prior art record/playback devices that used cassette tapes were well known (A524 at 1:18-25) and it was "well known to store virtually all forms of data in either digital or analog format within a computer [even including] voice information." (*Id.* at 2:4-6.)

During prosecution of the application which led to the issuance of the '774 patent in February 1996, the applicants narrowed their claims in response to the Examiner's rejection of the claims in view of the prior art. As a result of the narrowing amendment, all of the '774 patent claims require that the claimed device have "a ***flash memory*** module which operates as ***sole memory*** of the received processed sound electrical signals." (A537, A540 (emphases added).) The applicants argued that, as amended, the claims were patentable because "[a]s was noted in the Examiner conference, Applicant is unaware of any prior art teaching which uses flash memory ***without another memory system such as RAM.***" (A545 (emphasis added).) The '774 patent then issued.

## C. Reexamination of the '774 Patent

In 2010, a third party petitioned for *ex parte* reexamination of claims 1-15, 18, and 19 of the '774 patent, and the U.S. Patent and Trademark Office ("PTO") granted the petition. (A532-A533, '774 Patent Reexamination Certificate.) During the reexamination proceeding, e.Digital presented various arguments related to the

10

"control logic circuitry" recited in original independent claims 1 and 19, and ultimately amended the independent claims to add limitations to the "control logic circuitry" claim element, underlined below in the amended original claim 1, which e.Digital submitted on May 17, 2012:

> 1. (Currently Amended) A record/playback device for use with a removable, interchangeable, flash memory recording medium which enables extended recording comparable with tape cassette dictating equipment, said device comprising:
> a housing;
> a microphone element coupled to the housing and configured to receive and process sound into electrical signals;
> control circuitry coupled to the microphone element and including signal input circuitry, amplification circuitry, analog-to-digital conversion circuitry, memory control circuitry, signal output circuitry and control logic circuitry, <u>which includes a microprocessor coupled to switch circuitry,</u> for performing record and playback functional operations with respect to the electrical signals and other regulated components of the record/playback device;
> switch means coupled to the control circuitry for selecting the desired functional operations to be performed;
> a receiving socket electrically coupled to the memory control circuitry and configured for electrical coupling with ***a flash memory module which operates as sole memory of the received processed sound electrical signals*** and is capable of retaining recorded digital information for storage in nonvolatile form;
> a speaker coupled to the control circuitry for playback of recorded digital information; and
> a power source coupled to the control circuitry for supplying electrical power to the device;
> <u>wherein the power source is coupled to the switch circuitry; and</u>

11

> wherein the switch circuitry includes multiple transistors
> configured,
>> to enable supply of electrical power to the receiving socket and
>> to enable at least one of the microphone element and the speaker
>> during record and playback functional operations and in response to
>> control signals provided by the microprocessor, and
>>> to optionally disable supply of electrical power to the receiving
>>> socket and to optionally enable supply of electrical power to at least
>>> one of the microphone element and the speaker between occurrences
>>> of record and playback functional operations and in response to
>>> control signals provided by the microprocessor.

The claim language subject to this appeal, highlighted above, was not changed. The amended independent claim issued as new independent claim 33 on August 14, 2012, and claim 1 was canceled.

e.Digital did not amend the key "sole memory" limitation during the reexamination. e.Digital and the Examiner focused throughout the reexamination on the "control logic circuitry" limitation and neither e.Digital nor the Examiner ever addressed or discussed the "sole memory" limitation. (*See, e.g.*, A638-A646 (Examiner's summary of, and response to, e.Digital's arguments).) Moreover, the drawing labeled Exhibit F, shown on page 13 of the Brief for the Appellant, was never specifically discussed by e.Digital's expert in the PTO proceeding. The figures were submitted only for the purposes of facilitating the discussion with the examiner of "control circuitry" in relation to powering the device. Neither the presence or absence of RAM nor the requirement

12

of flash memory as the sole memory was the subject of the reexamination.  It was not discussed with the examiner and was not addressed by the reexamination certificate.  (*See* A52; A532-A533.)  Indeed, a version of that drawing that omitted RAM was later reproduced in the body of the expert's declaration in the reexamination, affirming that the sole memory limitation was not a subject of the reexamination. (*See* A840.)

### D.      U.S. Patent No. 5,839,108

e.Digital also asserted the '108 patent against Pantech and other defendants in the District Court.  Like the '774 patent, the '108 patent is directed to a "record/playback device for use with a removable, interchangeable, flash memory recording medium." (A562, Abstract.)  The '108 patent incorporates by reference the '774 patent disclosure and copies the first two Figures and accompanying text from the '774 patent. (A562-A564, A567 at 1:23-25.)

The asserted claim of the '108 patent, claim 2, is a word for word copy of claim 1 of the '774 patent with the addition of the "second microphone" limitation, and the minor changes of replacing "microphone" with "first microphone" and adding "voice" in the preamble. (*Compare* A528-A529 at 10:54-11:16 to A572 at 11:36-12:7.)  Claim 2 of the '108 patent recites the identical "sole memory" limitation that is in the '774 patent and was construed by the Colorado Court. (A572 at 11:62-12:1.)  The written description in the '108 patent for the "sole

13

memory" limitation is found in the references to the '774 patent and the Figures that were copied from the '774 patent into the '108 patent.

In the Reasons for Allowance in the PTO's Notice of Allowability of the '108 patent (A575-A581), the Examiner explained that the '108 patent embodies the same invention as the '774 patent, and merely adds a second microphone element to improve the performance of the system of the '774 patent:

> The present invention discloses a system for the reproduction of audio data using a flash memory, with the sound quality of a compact disk. The present invention provides an improvement over the system of Norris et al., U.S. 5,491,774, *which improvement appears to be limited to the incorporation of a second microphone element* utilized to cancel noise received at the first microphone element (note claim 2), to provide better sound quality.

(A577 (emphasis added).)

## SUMMARY OF THE ARGUMENT

The District Court properly concluded that all elements for issue preclusion were met and that e.Digital is estopped from arguing a claim construction different than that previously construed by the Colorado Court. The key "sole memory" claim limitation was previously construed in a litigation prosecuted by e.Digital against multiple defendants in the District of Colorado. In that case, the Colorado Court entered an order adopting the defendants' proposed constructions and rejecting those proffered by e.Digital. e.Digital accepted the adverse ruling,

settled with all of the remaining defendants and dismissed the Colorado case without asking the court to vacate its claim construction ruling.

A party is precluded from relitigating a previously ruled upon issue when the following three factors are met as they are here: (1) where the identical issue arose in the prior litigation; (2) where the prior proceeding ended with a final judgment on the merits; and (3) where the party against whom issue preclusion is asserted was a party, or in privity with a party, in the prior proceeding. The second and third factors are not at issue in this appeal. The Ninth Circuit law is clear that a settlement of a prior litigation is a final judgment in this context and e.Digital did not challenge the second element on appeal. There is no dispute that e.Digital was a party in the Colorado case and the third element is met.

e.Digital argues the first factor in its Brief. That is, e.Digital argues that the identical issue did not arise in the Colorado case. However, because all the asserted claims in the '774 and '108 patents contain the same "sole memory" claim limitation that the Colorado Court previously construed, there should be no dispute that the first requirement noted above is met and the identical issue arose in the prior litigation.

e.Digital argues that the intervening reexamination of the '774 patent has changed the claim construction determined by the Colorado Court, but nothing that happened during the reexamination entitles e.Digital to relitigate the construction

of the "sole memory" limitation. The submission of extraneous figures attached to an expert declaration submitted during the reexamination, which were never discussed or considered during the reexamination, did not create a new prosecution history in any way relevant to the "sole memory" limitation that is the subject of this appeal. Nor did (or for that matter could) e.Digital's submissions during the reexamination change the written description of the '774 patent such that the "sole memory" limitation means anything other than what it meant when the Colorado Court construed this term.

e.Digital argues that, as a result of the '774 patent reexamination, the "sole memory" limitation is broader and now encompasses subject matter that it previously did not cover. In particular, e.Digital argues that, as a result of the reexamination, the asserted '774 and '108 patent claims cover products that were excluded by the Colorado Court's construction of the "sole memory" limitation, namely products that include RAM. However, patent claims cannot be broadened through reexamination. 35 U.S.C. § 305. When patent claims *are* broadened as a result of reexamination, as e.Digital argues occurred here, the claims are invalid. Moreover, neither e.Digital nor the Examiner addressed or discussed the "sole memory" limitation during the reexamination. Thus, either the scope of the "sole memory" limitation was not broadened by the reexamination and there is an identity of issues, or the asserted claims are invalid.

The same issue is present for the '108 patent and therefore the effect of the issue preclusion properly extends to the "sole memory" limitation of the '108 patent that is identical to the "sole memory" limitation that is in the '774 patent, which was construed by the Colorado Court. The '108 patent incorporates by reference the '774 patent disclosure, copies the first two Figures from the '774 patent, and, as stated by the PTO Examiner, embodies the same invention as the '774 patent with the only improvement *limited* to a second microphone, an element unrelated to the "sole memory" limitation.

## ARGUMENT

### A.     Standard of Review

Because the application of collateral estoppel is not a matter within the exclusive jurisdiction of this court, a trial court's application of collateral estoppel is reviewed by applying the law of the regional circuit. *Reese v. Verizon Cal., Inc*, 498 Fed. Appx. 980, 982 (Fed. Cir. 2012), citing *Applied Med. Res. Corp. v. United States Surgical Corp.*, 435 F.3d 1356 (Fed. Cir. 2006). The Ninth Circuit has reviewed the application and non-application of collateral estoppel by trial courts under varying standards, either without deference or for abuse of discretion. *Id.*; *see also Applied Med. Res.*, 435 F.3d at 1360. Once it is determined that collateral estoppel is available, the Ninth Circuit reviews a district court's decision to accord preclusion and apply collateral estoppel for an abuse of discretion. *Id.*

With respect to a Rule 54(b) certification the appellate courts accord substantial deference to the lower court's discretion in determining whether an immediate appeal shall lie, because the lower court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." *Morrison–Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981), citing *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10 (1980).

### B.      Legal Standards of Collateral Estoppel

"Collateral estoppel 'precludes a plaintiff from relitigating identical issues by merely switching adversaries' and precludes a plaintiff 'from asserting a claim that the plaintiff had previously litigated and lost against another defendant.'" *Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (*quoting Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 (Fed. Cir. 1987) ("The prior determination of certain issues, including the issues of claim construction and of infringement by [one accused model] and non-infringement by [another accused model], bars judicial redetermination of those issues.").

The term "issue preclusion" encompasses the doctrine of "collateral estoppel." *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008).   Because issue preclusion is not unique to patent cases, this Court is "guided by the precedent of the regional circuit. However, for any aspects that may have special or unique

18

application to patent cases, Federal Circuit precedent is applicable." *Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d at 1380.

The District Court from which this appeal derives is controlled by Ninth Circuit law, where issue preclusion applies when:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party at the first proceeding.

*Paulo v. Holder*, 669 F.3d at 917 (internal quotation marks, citation and brackets omitted). Only the first element is at issue in this appeal. e.Digital did not challenge the second element and it is undisputed that the third element is met as e.Digital was a party in the Colorado case.

**C.     The District Court Correctly Concluded that the '774 Patent Claim Construction Issues Are Identical to Those Litigated in the Colorado Case.**

The mere existence of a reexamination, regardless of when it occurred, is not enough to avoid issue preclusion. A reexamination completed after a prior judgment does not terminate the preclusive effect of the prior judgment when the amended or added claims are not material to the issues presented in the prior lawsuit. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1340 41 (Fed. Cir. 2012) (preclusion applies because the claims at issue were "merely new versions of claims that were part of the . . . patent prior to its reexamination").

Federal Circuit law governs the determination of whether a reexamination materially changed claims at issue in a prior lawsuit. *See id.* at 1341 n.1.

e.Digital cannot avoid issue preclusion unless it can show that the claim amendments or arguments made during the reexamination were material to the "sole memory" limitation such that it is no longer the same limitation that was previously construed. The reexamination might have been relevant if e.Digital had *narrowed* the "sole memory" limitation during reexamination, but it did not. To the contrary, e.Digital now argues that it *broadened* the "sole memory" limitation. Or, if e.Digital had explained the meaning of the limitation in response to a rejection by the Examiner there may be new prosecution history estoppel to apply. But again, this did not occur during the reexamination. Neither e.Digital nor the Examiner addressed or discussed the "sole memory" limitation. e.Digital and the Examiner focused the reexamination on the "control logic circuitry" limitation. (*See, e.g.*, A638-A646 (Examiner's summary of, and response to, e.Digital's arguments).) The expert declaration to which e.Digital's revised patent figures were attached only discusses whether limitations relating to the "control logic circuitry" overcame the prior art. (A834-A853 at ¶¶ 1-4 & 8-47.)

e.Digital does not cite any office action, response, or other paper from the reexamination where e.Digital or the Examiner addressed the "sole memory" limitation. While an examiner's "construction of the asserted claims carries

significant weight" and the "Court can draw upon a patentee's statements during reexamination," (Brief for the Appellant at 21), none of that is relevant here where the limitation at issue was never discussed during the reexamination. There is nothing in the prosecution history to which the Court can give any weight or upon which the Court can draw to construe the "sole memory" limitation at issue in this appeal.

Issue preclusion applies when, as here, an accused infringer does not seek to apply issue preclusion with respect to the scope of the claims as a whole but, rather, only to the construction of terms that were in the claims of the original patent and remain unchanged in the claims of the reexamined patent. *See Gibson Guitar Corp. v. 745 LLC*, No. 3:11-0058, 2012 WL 90445, *5 (M.D. Tenn. Jan. 11, 2012). In *Gibson Guitar*, the court applied collateral estoppel principles to prevent the patentee from relitigating claim construction issues decided in a previous case. *Id.* at *4. Like e.Digital, the patentee in *Gibson Guitar* argued that an intervening reexamination precluded application of collateral estoppel. *Id.* at *5. The court rejected that argument because the specific claim terms at issue were "identical in both the original patent and the reexamined patent." *Id.*

The *Gibson Guitar* court also noted that the patentee "made no effort to avoid the [prior claim construction] ruling during the reexamination proceeding, did not seek to convince the examiner that the [prior] court was in error, and did

not seek a [different] claim construction. . .” *Id.* at *6. Similarly, e.Digital made no effort during the '774 patent reexamination to avoid the Colorado Court's claim construction ruling even though the examiner presiding over the reexamination had reviewed the Colorado Court's claim construction ruling and stated that he had considered the ruling. (A660.) Indeed, e.Digital filed Information Disclosure Statements in the '774 patent reexamination with copies of the parties' claim construction briefs filed in the Colorado case. (A666.) Thus, e.Digital was aware that the Colorado Court's claim construction ruling was at issue in the patent reexamination and that it had an opportunity to address the adverse claim construction ruling in that context, but e.Digital made no effort to address it. Simply put, the reexamination proceeding did not change the meaning of the "sole memory" claim term construed in the Colorado case and, therefore, those proceedings have no effect on the application of issue preclusion in this case.

e.Digital argues that the District Court cannot ignore the additional prosecution history created during reexamination of the '774 patent. (Brief for the Appellant at 34.) However, the District Court did not ignore it, provided a well-reasoned, detailed analysis of the reexamination history presented to it, and concluded that "[t]he presence of RAM, or the requirement of flash memory as the

sole memory, was not the subject of the reexamination, was not discussed with the examiner, and was not addressed by the reexamination certificate." (A52.)

e.Digital now takes the position in this appeal that the District Court inappropriately interpreted the reexamination history in its ruling. (Brief for the Appellant at 39.) Yet, before the District Court, e.Digital presented documents from the reexamination history allegedly showing a device with RAM, fully briefed its position, and made arguments at the hearing directed to the same. e.Digital never suggested that review of the reexamination history by the District Court would be "improper." Only after the District Court confirmed that there was no discussion relating to memory during reexamination did e.Digital object to review of the reexamination history.

e.Digital's attempt to rely on *Golden Bridge* is misplaced. (Brief for the Appellant at 34.) Here, the reexamination did not address, affect or relate to the construed claim limitations in the Colorado proceedings, or in this case. The claim construction issue remains identical to the issue fully and fairly litigated by e.Digital in Colorado. In *Golden Bridge*, the reexamination presented "additional prosecution history that is necessarily relevant to claim construction." *Golden Bridge Tech., Inc. v. Apple Inc.*, 937 F. Supp. 2d 490, 496 (D. Del. 2013). To the contrary, there is no additional history relevant to the previously construed terms here leaving *Golden Bridge* inapposite to e.Digital's position particularly in view

of the contradictory and applicable Ninth Circuit authority.  However, even in the Third Circuit's approach suggested by *Golden Bridge*, there is nothing in the intrinsic record of the '774 patent supporting a new construction.  *See id.* at 496-98.

> ### D.    The Claims of the '774 Patent at Issue are Invalid if Collateral Estoppel Does Not Apply

35 U.S.C. § 305 prohibits amendments enlarging the scope of a claim of a patent in a reexamination proceeding.  "A claim is enlarged if it includes within its scope *any subject matter that would not have infringed* the original patent."  *In re Freeman*, 30 F.3d 1459, 1464 (Fed. Cir. 1994) (emphasis added).  "A claim that is broader in *any* respect is considered to be broader than the original claims even though it may be narrower in other respects." *Id.* (emphasis added).  Thus, "the *Freeman* test is whether there is any *conceivable* apparatus that is contained within the scope of [the new claim], but not within the original claims of the [patent-in-suit]." *Sharper Image Corp. v. Neotec, Inc.*, 373 F. Supp. 2d 993, 997 (N.D. Cal. 2005) (emphasis in original). Any claim that has been impermissibly broadened by reexamination is *invalid*, "notwithstanding Defendant's burden to show invalidity by clear and convincing evidence." *Id.* at 998.

Under the Colorado Court's construction of the "sole memory" limitation, e.Digital agreed that devices that use *any* form of memory, including RAM, in addition to flash memory cannot infringe the '774 patent claims. (A597-A598

(construing "flash memory module which operates as sole memory" to require that "the device use **only flash memory**, not RAM or any other memory system. . ." (emphasis added)); *see also* A822-A823 (e.Digital stipulating to non-infringement of the "sole memory" limitation by products that use RAM).)   Nonetheless, e.Digital argues that the asserted '774 and '108 patent claims, including new claim 33 in the '774 patent (the only independent '774 patent claim asserted in the current case), are broader than the pre-reexamination claims because the reexamined claims cover devices that use RAM.   (*See, e.g.*, Brief for the Appellant at 41 ("[t]he '774 patent reexamination history clearly references the presence of RAM in the control circuitry of the claimed invention, which is used to support microprocessor operations.") & 42-43 ("[a] person of ordinary skill in the art . . . having the benefit of reviewing the amended claims and the prosecution history . . . would therefore clearly understand that the invention of amended claims 33 and 34 requires the presence of RAM to support, among other things, microprocessor applications; a conclusion that contradicts that reached by Judge Krieger.").)   Thus, if e.Digital's argument were to be found correct, then the asserted '774 and '108 patent claims are invalid.   Alternatively, the present claim construction issue is identical to the claim construction issue already ruled upon by the Colorado Court, and the first factor for issue preclusion has been met.

## E.   e.Digital's Same Microprocessor Argument Failed In Colorado

e.Digital made the same arguments regarding the "microprocessor" to the Colorado Court that it made to the District Court under the guise of the reexamination.  These arguments failed in Colorado, and e.Digital should be precluded from re-litigating that issue.  e.Digital argues that "[t]he '774 patent reexamination history clearly references the presence of RAM in the control circuitry of the claimed invention, which is used to support microprocessor operations."  (Brief for the Appellant at 41.)  Initially, as explained above, e.Digital's argument that the asserted claims are broader due to the reexamination violates 35 U.S.C. § 305, and, if correct, invalidates those claims as a matter of law. *Sharper Image*, 373 F. Supp. 2d at 998.  Moreover, e.Digital ignores that the arguments and evidence cited in its Brief were before the Colorado court when it construed the "sole memory" limitation.

e.Digital's argument that the "microprocessor" of the reexamined claims is a new limitation is inconsistent with the '774 patent.  (Brief for the Appellant at 41-44.)  Original dependent claims 15 and 16 include the purportedly "new" microprocessor limitation.  (A529 at 12:9-19.)  Moreover, e.Digital argued before the Colorado Court, just as it did before the District Court and does here, that the claims allow for RAM or other memory, for the operation of the microprocessor. (*Id.*; *cf.* A886, A896.)  e.Digital presented voluminous evidence to the Colorado

26

Court in support of this argument including schematics of e.Digital's early commercial product, expert and inventor declarations, and the testimony of an inventor at the *Markman* hearing. (*See, e.g.*, A924-A925 (Pltf.'s counsel), A928 A929 (inventor), A931 (inventor), and A933 (inventor).) The Colorado defendants' expert also addressed this issue at the *Markman* hearing. (A937 (explaining that the only flash memory disclosed in the '774 patent is accessed by the claimed microprocessor in the same manner as RAM, so that RAM is not needed).) Thus, e.Digital already made this argument to the Colorado Court, which rejected it. (A585 (noting inventor's testimony) & A595 ("Extrinsic evidence further supports the conclusion that persons skilled in the art would have understood [the] concession that his amended claim recited a device [that] abandoned reliance upon RAM.").)

e.Digital also relies on added limitations in claims 33 and 34 as opposing the application of issue preclusion arguing that those claims are now "[n]arrower." (Brief for the Appellant at 44-46.) This Court has squarely rejected that exact argument:

> [W]e cannot agree with [the patentee] that simply because he added words to his claims that those claims are further narrowed in scope. The English language is not that simple. Rather, given the interpretation of the district court during the infringement litigation, it is clear that the amendments to the independent claims during reexamination attempt an end run around the interpretation there that the claims are limited to at least overall neutral buoyancy.

*In re Freeman*, 30 F.3d at 1464-65. "[T]he *Freeman* test is whether there is any **conceivable** apparatus that is contained within the scope of [the new claim], but not within the original claims of the [patent-in-suit]." *Sharper Image*, 373 F. Supp. 2d at 997 (emphasis in original). The '774 patent claims were construed as excluding RAM in a case that reached final judgment. If the reexamined '774 patent claims now cover products that use RAM, then they are invalid due to an impermissible broadening during reexamination. Whether as a result of issue preclusion or because the '774 patent claims are invalid, e.Digital cannot legitimately assert the '774 patent against products that use RAM.

With all three of the Ninth Circuit's issue preclusion factors met, the Court should affirm the application of issue preclusion to bar e.Digital from asserting any different construction for the "sole memory" limitation addressed in the Colorado Court's claim construction ruling, which remains preclusive under the controlling standard.

### F. The District Court Correctly Applied Collateral Estoppel to the '108 Patent Because the Identical Issue Was Already Adjudicated.

The District Court properly applied collateral estoppel to the "sole memory" claim term because the identical issue was litigated in the Colorado case. While a collateral estoppel determination is generally guided by regional circuit precedent, Federal Circuit precedent is applied for those aspects of such a determination that

involve substantive issues of patent law. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d at 1380; *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d at 1341 n.1 (Fed. Cir. 2012) ("[T]he question of whether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases and we therefore apply our own law to that issue.").

Contrary to e.Digital's argument, collateral estoppel applies to *issues* but not necessarily claims or patents. *See Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2014) ("Our precedent does not limit collateral estoppel to patent claims that are identical. Rather it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." (emphasis original)).

The law is clear that collateral estoppel can and should be applied to different claims of different patents where the claims are substantially similar. *See id*. In *Ohio Willow*, this Court found that the application of collateral estoppel was appropriate where twice-reexamined claims of a different patent did not even have the same language as the adjudicated patent claims. *Id.* at 1343 ("The mere use of different words in these portions of the claims does not create a new issue…"). Rather, if the differences between the unadjudicated patent claims and the adjudicated patent claims do not materially alter the question at issue, collateral estoppel applies. *Id.* at 1342.

29

Here, not only are the claims substantially similar, the "sole memory" limitation of claim 2 of the '108 patent is *identical* to the "sole memory" limitation in the adjudicated claim 1 of the '774 patent. The following table compares those two claims with underlining noting the additions to claim 2 of the '108 patent. As can be easily seen in the table, claim 2 of the '108 patent is a word for word copy of claim 1 of the '774 patent with the only difference being the addition of a second microphone element.

| Claim 1 of the '774 patent | Claim 2 of the '108 patent |
|---|---|
| 1. A record/playback device for use with a removable, interchangeable, flash memory recording medium which enables extended recording comparable with tape cassette dictating equipment, said device comprising: | 2. A record/playback device for use with a removable, interchangeable, flash memory recording medium which enables extended <u>voice</u> recording comparable with tape cassette dictating equipment, said device comprising: |
| a housing; | a housing; |
| a microphone element coupled to the housing and configured to receive and process sound into electrical signals; | a <u>first</u> microphone element coupled to the housing and configured to receive and process sound into electrical signals; |
| | <u>a second microphone element coupled to the housing and configured to receive and process sound so as to cancel noise received at the first microphone element;</u> |
| control circuitry coupled to the microphone element and including signal input circuitry, amplification circuitry, analog-to-digital conversion circuitry, memory control circuitry, | control circuitry coupled to the microphone element and including signal input circuitry, amplification circuitry, analog-to-digital conversion circuitry, memory control circuitry, |

30

| | |
|---|---|
| signal output circuitry and control logic circuitry for performing record and playback functional operations with respect to the electrical signals and other regulated components of the record/playback device;<br><br>    said switch means coupled to the control circuitry for selecting the desired functional operations to be performed;<br><br>    a receiving socket electrically coupled to the memory control circuitry and configured for electrical coupling with ***a flash memory module which operates as sole memory of the received processed sound electrical signals*** and is capable of retaining recorded digital information for storage in nonvolatile form;<br><br>    a speaker coupled to the control circuitry for playback of recorded digital information; and<br><br>    a power source coupled to the control circuitry for supplying electrical power to the device. | signal output circuitry and control logic circuitry for performing record and playback functional operations with respect to the electrical signals and other regulated components of the record/playback device;<br><br>    said switch means coupled to the control circuitry for selecting the desired functional operations to be performed;<br><br>    a receiving socket electrically coupled to the memory control circuitry and configured for electrical coupling with ***a flash memory module which operates as sole memory of the received processed sound electrical signals*** and is capable of retaining recorded digital information for storage in nonvolatile form; <u>and</u><br><br>    a speaker coupled to the control circuitry for playback of recorded digital information; and<br><br>    a power source coupled to the control circuitry for supplying electrical power to the device. |

(emphasis added).

The '108 patent incorporates the '774 patent by reference (A562-A564, A567 at 1:23-25) and makes repeated references to the '774 patent not only in the discussion of prior art but also in the detailed description. (*See, e.g.*, A568 at 4:46, A570 at 7:23.) Indeed, the '108 patent specification is a near word for word copy of the '774 patent. (*Cf.* A567-A571, A524-A528.) The prosecution history of the

'108 patent explains that the '108 patent provides the limited improvement of a second microphone over the system of the '774 patent. (A577, Notice of Allowability ("The present invention provides an improvement over the system of Norris et al., U.S. 5,491,774, which improvement appears to be limited to the incorporation of a second microphone element. . .")) Moreover, e.Digital admitted that "the '108 [patent] embraces the prosecution file history and the devices of [the] '774 [patent]." (*See* A53, quoting A986.) As noted by the District Court, "[a]lthough the '108 patent does not originate in the same patent application as the '774 patent, *it is undisputed the patents are closely related*." (A53 (emphasis added).)

As was correctly found by the District Court, the analysis for determining the construction of the "sole memory" limitation in the '108 patent was already performed by the Colorado Court. (*See* A62-A69.) The Colorado Court conducted a detailed review and analysis of the specification of the '774 patent, which is both incorporated by reference in and nearly identical to the specification of the '108 patent. (A65.) The prosecution history of the '108 patent is undeniably linked to the prosecution history of the '774 patent as evident from both the examiner's reasons for allowance (*See* A577.) and admitted by e.Digital at oral argument. (A986; *see also*, A53.)

e.Digital argues that the mere presence of a nondescript block labeled SRAM in Figures 3 and 4 of the '108 patent necessarily precludes one from reading the '108 patent consistent with the Colorado Court's claim construction. According to e.Digital, Figures 3 and 4 show that the DSP engages with SRAM "as the sound signals travel from the microphone, through the CODEC and DSP and, ultimately, to the removable flash memory." (Brief for the Appellant at 28). This position is unsupported by the '108 patent. As recognized by the District Court, "the specification [of the '108 patent], including the discussion of the figures, does not mention SRAM." (A76 (emphasis added).) The very most shown in Figures 3 and 4 of the '108 patent is an SRAM connected to Bus Control, Data Bus and Address Bus lines that also connect to the Flash ROM and the DSP. Nothing in Figures 3 and 4 indicate that the DSP interfaces with the SRAM much less engages with the SRAM as sound signals travel through the CODEC and DSP and to the Flash ROM.

Therefore, the District Court properly determined that the Colorado Court has already analyzed the relevant facts that are common to both the '774 patent and the '108 patent in construing the identical "sole memory" limitation found in both patents.

e.Digital's reliance on *Brain Life, LLC v. Elekta Inc.* is also misplaced. Docket No. 2013-1239, 2014 U.S. App. LEXIS 5390. *20-*21 (Fed. Cir. March

24, 2014).  According to e.Digital, the law after *Brain Life* is that "there is no issue preclusion where asserted claims were not previously construed in a prior case." (Brief for the Appellant at 22).  This is simply not correct.

As discussed *supra*, issue preclusion is appropriate where the claims are substantially similar regardless of whether the asserted claims have been previously construed themselves.  In *Brain Life*, the previous construction at issue was of the function within a means plus function term of the apparatus claim. *Brain Life*, 2013-1239, at 4.  The unadjudicated method claims did not have this limitation and were broader than the apparatus claims previously construed.  *Id*. at 8.  Thus, *Brain Life* is consistent with *Ohio Willow* in that the operative inquiry is whether the claim limitations are substantially similar.  The reason issue preclusion was not appropriate in *Brain Life* was not because the method claims had not been previously adjudicated *per se* but because they were of different scope and therefore were not substantially similar to the previously construed means plus function apparatus claim term.  In contrast to *Brain Life*, the "sole memory" limitation of the '774 patent and the '108 patent is identical, recited verbatim in the claims of both patents.  Therefore, the *Brain Life* decision is inapposite to the facts of the present case and is not controlling.

Likewise, e.Digital overstates the holding in *Kearns v. Gen. Motors Corp.*, 94 F.3d 1552 (Fed. Cir. 1996).  In *Kearns*, a pro se plaintiff's prior action was

involuntary dismissed on procedural grounds. *Id.* at 1555 ("The basis of the dismissal [] was Dr. Kearns' inadequate compliance with the court's orders and deadlines."). There was no prior adjudication of the merits. *Id.* at 1556 ("Neither [court] discussed the substance of any of the patents before it."). The Court reasoned that applying *res judicata* to bar a cause of action requires cautious restraint particularly when the prior action was dismissed on procedural grounds. *Id.* While the majority of the decision is directed to the issues of *res judicata*, the *Kearns* Court did briefly address issue preclusion stating that "in the case at bar it is not possible to show that the identical issue was presented" noting that patents are presumed[1] to cover independent and distinct inventions. *Id.* at 1556. As there had been no adjudication on the merits and the prior dismissal was on procedural grounds, the *Kearns* Court did not have the benefit of knowing the relation

_____

[1] e.Digital makes much of a presumption that different patents may cover independent and distinct inventions. However, such a presumption is not absolute and does not go to the closeness of the inventions or particular claim elements. Indeed, the *Ohio Willow* Court found that the two patents at issue there "use slightly different language to describe substantially the same invention." 735 F.3d at 1342. Moreover, there is a large body of case law directed to the issue of double patenting because of the simple fact that multiple patents can be and often are directed to substantially the same invention. As discussed, the '774 patent and the '108 patent are closely related and the claims are nearly identical with the only exception being the addition of a second microphone in the claims of the '108 patent. Therefore, to the extent there is a presumption that different patents cover distinct inventions, that presumption would not apply to the present case as the '774 patent and the '108 patent are closely related and directed to substantially the same invention with the identical claim term at issue.

between the patents at issue and exercised caution. In contrast to *Kearns*, in the present case there has been a prior adjudication on the merits and the '774 and '108 patents are closely related. Additionally, as discussed *supra*, many years after the *Kearns* decision, this Court clearly stated that "our precedent does not limit collateral estoppel to patent claims that are identical" in applying collateral estoppel to a patent that was not before a prior court. *Ohio Willow*, 735 F.3d at 1342.

Thus, the claim construction of the "sole memory" limitation found, word for word, in both the '774 and '108 patents, which are inextricably linked by their specifications and prosecution histories, presents the same issue already litigated in the Colorado Case. (*See* A53-A54.) Accordingly, the District Court properly applied collateral estoppel to preclude e.Digital from relitigating the scope of the "sole memory" claim term found in the '108 patent claims.

### G.    The District Court Was Within its Discretion to Amend the Stipulated Partial Judgments

The law of the Supreme Court, the Ninth Circuit and this Court provide sound and consistent support for the District Court's order amending the stipulated partial judgments as to Pantech and other defendants. The Supreme Court has determined that the focus of a Rule 54(b) inquiry should be on the relationship between the adjudicated and the unadjudicated claims, and on the likelihood that unnecessary appellate review will result from a certification of the adjudicated

36

claims. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980). In *Curtiss-Wright*, the Supreme Court noted the factors underlying the district court's determination to enter separate judgment under Rule 54(b). The Supreme Court found that the essential inquiry there was "whether, after balancing the competing factors, finality of judgment should be ordered to advance the interests of sound judicial administration and justice to the litigants." *Id.* at 5. The district court in *Curtiss-Wright* found that certification would not result in unnecessary appellate review; that the claims finally adjudicated were separate, distinct, and independent of any of the other claims or counterclaims involved, that review of these adjudicated claims would not be mooted by any future developments in the case, and that the nature of the claims was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals. *Id.* at 8.

When considering a Rule 54(b) certification, a trial court must first assess the finality of the disputed ruling, then determine whether "there is no just reason to delay." For a ruling to be considered final, it must dispose fully "of at least a single substantive claim." *Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 42 (9th Cir. 1988), citing *Acha v. Beame*, 570 F.2d 57, 62 (Fed. Cir. 1978). The District Court has discretion to decide which "final" decisions in a multi-claim action should be sent to appeal immediately and which should be withheld pending

resolution of the entire controversy in the District Court.  *Id.* at 43.  The process is designed to avoid fragmentation of appeals, and thus is necessarily case-specific. *Id*.  It entails an assessment of the litigation as a whole, and a weighing of all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances.

Consistent with the standards set forth in *Curtiss-Wright* and *Spiegel*, the District Court engaged in a detailed analysis of the status of the litigations before it and considered the potential consequences if the remaining litigations involving the same issues were not be appealed to this Court.  The District Court granted GoPro's motion to amend its judgment and also amended Pantech's stipulated judgment.  (A33-A35.)  The District Court was within its discretion to amend the judgments in all the consolidated cases to avoid repetitive appeals to this Court. Because consolidation merges all consolidated cases into one, when final judgment is entered in fewer than all consolidated cases, Rule 54(b) certification is appropriate before any finally adjudicated case can be appealed.  Order Granting Motion to Amend, at p.6, citing *Spraytex Inc. v. DJS&T & Homax Corporation*, 96 F.3d 1377 (Fed. Cir. 1996).

The District Court has authority to amend rulings into final judgments under Rule 54(b) when (1) the judgment is an ultimate disposition of the claims at issue, and (2) the district court expressly finds no just reason to delay.  *Spiegel*, 843 F.2d

at 42-43.  The appellate court should accord substantial deference to the lower court's discretion in determining whether an immediate appeal shall lie because the lower court is "the one most likely to be familiar with the case and with any justifiable reasons for delay."  *Morrison–Knudsen*, 655 F.2d at 965.

In finding that certification is appropriate with respect to *GoPro*, and given the fact that the same order applying collateral estoppel was already on appeal in *Huawei*, certification of the *GoPro* case alone would leave open the possibility of appeal in the *Pantech* case at a later time, resulting in multiple appeals of the same issue – the situation Rule 54(b) intends to avoid.   Order Granting Motion to Amend, at p.7.  Indeed, had the Court not extended its order to Pantech, there could be scattershot disposition of this litigation and the associated judicial inefficiencies that would arise from this issue being brought the this Court multiple times.

e.Digital argues that the District Court lacked jurisdiction to amend its own judgment, claiming that the District Court's actions "fly in the face of  the specific language of FRCP 54(b)," because Rule 54(b) "plainly provides that only 'upon a party's motion' may the Court amend its findings and amend a judgment accordingly."  Brief for the Appellant at 49-50.  e.Digital's argument is confused as Rule 54(b) does not contain the language quoted in its brief nor does Rule 54(b)

have a requirement that the Court may amend its findings and amend a judgment "only upon a party's motion."[2]

To the contrary, Rule 54(b) expressly states that "the court may direct entry of a final judgment," in a situation where, as here, the District Court expressly found no just reason for delay. This rule clearly provides the District Court authority to enter final judgment as to certain claims or parties, regardless of whether a motion is filed requesting the court to do so.

e.Digital also argues that the District Court cannot amend Pantech's stipulated judgment because a party's choices in designing their stipulations may not be unilaterally undone by a Court. Brief for the Appellant at 49, citing *Kapusta v. Gale Corp.*, 457 F. Supp. 2d 1051, 1060 (E.D.Cal. 2006). The *Kapusta* case,

---

[2] Rule 54(b) in full text states:

(b) JUDGMENT ON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court **may direct entry of a final judgment** as to one or more, but fewer than all, claims or parties only **if the court expressly determines that there is no just reason for delay**. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. (emphasis added).

however, has nothing to do with a court's authority to amend its own decisions for the purpose of making it final and appealable.[3]

**H.**      **The District Court Made Adequate Findings to Conclude the Stipulated Judgments Met The Finality Standard of Rule 54(b)**

e.Digital argues that this Court does not have jurisdiction to hear this appeal because the District Court did not make an adequate statement of finality indicating the lack of a just reason of delay and that the stipulated partial judgments could not be found to be final for Rule 54(b) purposes. The District Court's statement of finality, however, is quite clearly directed to the Pantech case:

> The stipulated partial judgments in case nos. … 13cv23 (*Pantech*) … are hereby amended by replacing the language that "this Stipulated Partial Judgment of Non-Infringement is not final judgment pursuant to Federal Rule of Civil Procedure 54(b)," or language to the same effect, with the following sentence, "For the reasons stated in the Order Granting Motions to Amend or Correct Judgment and Staying Actions Pending Appeal, the Court finds no just reason for delaying entry of final judgment. Accordingly, this Stipulated Partial Judgment of Non-Infringement is final pursuant to Federal Rule of Civil Procedure 54(b).

Order Granting Motion to Amend at p. 9.

---

[3] In *Kapusta*, the court's ruling was that a party cannot ask the court to undo a sweeping admission made by itself in a stipulation, even if a claim construction in favor of that party later makes what was admitted disputable. *See Kapusta*, 457 F. Supp. 2d at 1060.

Accordingly, regardless of whether the AIA affected the *Spraytex* decision, the determination made by the District Court was clearly directed to amending the Stipulated Partial Judgment of Non-Infringement in the Pantech case.

Additionally, the District Court explained, at length, why there is no just reason for delay. (*See, e.g., Id.* at 7, "As the Huawei case is already on appeal, certifying the balance of the cases ensures that the collateral estoppel order will be appealed only once . . . The appellate decision may narrow claim construction issues. . ."). Contrary to e.Digital's unfounded assertion, the District Court did make an express statement of finality and indicated the lack of a just reason for delay when deciding that the application of Rule 54(b) is appropriate.

e.Digital further argues that the stipulated partial judgment cannot support a finding of finality because (1) it is without prejudice, and (2) it included a reservation of rights in the event the collateral estoppel order is reversed. e.Digital cites no case law in support of its position that a dismissal without prejudice cannot be final for Rule 54(b) purposes. This Court has held to the contrary. *See Doe v. United States*, 513 F.3d 1348, 1354 (Fed. Cir. 2008) (finding jurisdiction over an appeal and finding an appealable final judgment where there was a dismissal without prejudice to be consistent with Rule 54(b)).

The District Court made adequate findings and was within its discretion to amend the partial judgment in the Pantech case. Accordingly, this Court has jurisdiction to hear this appeal.

## CONCLUSION

The claim construction of record for the '774 patent in the prior litigation lost by e.Digital has preclusive effect notwithstanding an intervening reexamination that did not address the disputed claim term. The identical claim term found in the '108 patent is controlled by the construction of that term in the related '774 patent. Accordingly, the Court should affirm the District Court's application of the doctrine of issue preclusion and hold e.Digital to the record it has made following a full, fair and complete opportunity to be heard.

DATED: June 5, 2014                    Baker & McKenzie LLP

                                       / s /  Kevin M. O'Brien
                                       Kevin M. O'Brien
                                       D. James Pak
                                       Matt Dushek
                                       Yi Fang
                                       BAKER & McKENZIE LLP
                                       815 Connecticut Avenue, N.W.
                                       Washington, DC 20006
                                       Telephone: (202)452-7000
                                       Fax: (202) 452-7074

                                       *Counsel for Defendants-Appellees*
                                       *Pantech Co., Ltd. and*
                                       *Pantech Wireless, Inc.*

FORM 19.   Certificate of Compliance With Rule 32(a)

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [          9865          ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using
[                 *Microsoft Word 2010*                 ] in
[              *Times New Roman, Font Size 14*              ], or

☐    The brief has been prepared in a monospaced typeface using
[     *state name and version of word processing program*     ] with [
[     *state number of characters per inch and name of type style*     ].

/s/  Yi Fang
_____
(Signature of Attorney)
Yi Fang
_____
(Name of Attorney)
Counsel for Appellees Pantech Co., Ltd. et al.
_____
(State whether representing appellant, appellee, etc.)
June 5, 2014
_____
(Date)

Reset Fields

Form 30

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on | Jun 10, 2014 |
by:

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| Yi Fang | | /s/ Yi Fang |
Name of Counsel                                       Signature of Counsel

Law Firm | Baker & McKenzie LLP |

Address | 815 Connecticut Avenue, N.W. |

City, State, ZIP | Washington, D.C. 20006 |

Telephone Number | 202-452-7000 |

FAX Number | 202-452-7074 |

E-mail Address | yi.fang@bakermckenzie.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.